## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER BLESSING, | : | |
| CODY GIOVANNAGELO, FABIAN | : | NO. 2:20-cv-1212 |
| GIOVANNAGELO, NICO | : | |
| GIOVANNAGELO and RYAN JONES, | : | |
| PLAINTIFFS | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| CITY OF LATROBE, ROSEMARIE M. | : | |
| WOLFORD, MAYOR, LATROBE | : | |
| VOLUNTEER FIRE DEPARTMENT, | : | |
| JOHN BRASILE, FIRE CHIEF and | : | |
| CHUCK McDOWELL, JR., FIRE | : | |
| DEPARTMENT PRESIDENT, | : | |
| DEFENDANTS | : | |

## AMENDED COMPLAINT

## JURISDICTION AND VENUE

1.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(1), (3) and (4). This is an action for damages and/or injunctive relief authorized, arising under and instituted under 42 U.S.C.A. 2000(e)-5(f), 28 U.S.C.A. 1343(1)(3)(4), 42 U.S.C.A. 1983, the First and Fourteenth Amendments to the Constitution of the United States. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by 42 U.S.C.A. 2000e *et seq* providing for injunctive and other relief against discrimination in employment.

2.  All conditions precedent to jurisdiction under 42 U.S.C.A. 2000-e5(f)(3) have occurred or been complied with and the matter in controversy exceeds, exclusive of interest

and costs, the sum of One Hundred Fifty Thousand ($ 150,000.00).

      3.    Venue is appropriate in the Western District of Pennsylvania. Plaintiffs reside and the Defendants conduct business in this District and the causes of action arise out of events which took place in this District.

## PARTIES

      4.    Plaintiff Christopher Blessing (hereinafter "Plaintiff Blessing") is an adult individual residing at 118 East Second Avenue, Latrobe, Westmoreland County, Pennsylvania 15650. Plaintiff Blessing began his service as a Latrobe firefighter in September, 2016 and serves as Chaplain for Hose Company No. 1.

      5.    Plaintiff Cody Giovannagelo (hereinafter "Plaintiff C. Giovannagelo") is an adult individual residing at 412 Mary Street, Latrobe, Westmoreland County, Pennsylvania 15650. Plaintiff C. Giovannagelo began his service as a Latrobe firefighter in January, 2012 and has served as Secretary of Hose Company No. 1.

      6.    Plaintiff Fabian Giovannagelo (hereinafter "Plaintiff F. Giovannagelo") is an adult individual residing at 4649 Route 982, Latrobe, Westmoreland County, Pennsylvania 15650. Plaintiff F. Giovannagelo began his service as a Latrobe firefighter in January, 1983 and served as President of Hose Company No. 1.

      7.    Plaintiff Nico Giovannagelo (hereinafter "Plaintiff N. Giovannagelo") is an adult individual residing at 4649 Route 982, Latrobe, Westmoreland County, Pennsylvania 15650. Plaintiff N. Giovannagelo began his service as a Latrobe firefighter in November, 2007.

      8.    Plaintiff Ryan Jones (hereinafter "Plaintiff Jones") is an adult individual residing at 126 Joanne Drive, Latrobe, Westmoreland County, Pennsylvania 15650. Plaintiff

Jones began his service as a Latrobe firefighter in March, 2003.

9.      Defendant City of Latrobe (hereinafter "Defendant City") is a political subdivision of the Commonwealth of Pennsylvania, situated within the Western District of Pennsylvania, with its address at 901 Jefferson Street, Latrobe, Westmoreland County, Pennsylvania 15650. It is incorporated as a city of the Third Class under the laws of the Commonwealth of Pennsylvania and is empowered to establish, regulate and control its fire department for the purpose of protecting and preserving the persons and property within the jurisdiction of the city and owns, operates, manages, directs and controls the volunteer fire department and all hose companies within the City of Latrobe.

10.     Defendant Rosemarie M. Wolford (hereinafter "Defendant Wolford") is an adult individual who, at all times relevant to the within action, was elected and served as Mayor of Defendant City and was responsible for supervising the actions of her supervisory/ management level employees, including the Fire Chief, the Latrobe Fire Department and its officers.

11.     As Mayor, Defendant Wolford is an elected official of Defendant City, in direct supervision of the fire department and its sworn members and also of the selection of the supervisory personnel of the Latrobe Fire Department and, as such, is responsible for the formulation and implementation of practices, policies, customs and procedures and for overseeing the day to day operation and command of the fire department.

12.     As Mayor, Defendant Wolford is responsible for promulgating and enforcing all rules and regulations concerning the operation of the Latrobe Fire Department. She is further responsible, by herself or through her agents, to investigate the alleged misconduct of

fire department officers, outside of the normal channel of investigation internal to the fire department.

13.     At all times relevant to the within action, Defendant Wolford acted within the scope of her duties and authority, under color or title of state or municipal or public law or ordinance and supervised or controlled one or more of the Defendants named herein in their conduct and actions or acted in concert with them in performance of their conduct or actions.

14.     The Latrobe Volunteer Fire Department (hereinafter "Defendant Fire Department") is a non-profit corporation, organized and licensed under the non-profit corporation law of the Commonwealth of Pennsylvania, with its principal address at P.O. Box 172, Latrobe, Westmoreland County, Pennsylvania 15650. At all times relevant to the within matter, Defendant Fire Department had a duty to enforce its by-laws and protect its members, including Plaintiffs.

15.     At all times relevant to the within action, Defendant City, by its City Code, adopted and incorporated the Defendant Fire Department By-laws and supervised and was responsible for its actions, including the actions of its supervisory personnel.

16.     At all times relevant to the within matter, the actions of Defendant Fire Department, by and through its supervisory/elected executive officers, constituted state action, under color or title of state or municipal or public law or ordinance.

17.     Defendant John Brasile (hereinafter "Defendant Brasile") is an adult individual who, at all times relevant to the within action, served as Fire Chief for Defendant Fire Department and all hose companies.

18.     At all times relevant to the within action, Defendant Brasile had policy-

making authority for Defendant Fire Department and was responsible for carrying out his supervisory responsibilities in a manner which complied with all federal and state laws, the Latrobe City Code, Defendant Fire Department By-laws and the individual by-laws for each incorporated hose company.

19.     As Fire Chief, Defendant Brasile was responsible for protecting the civil rights of all volunteer firefighters, including those rights mandated under the First and Fourteenth Amendments of the United States Constitution.

20.     At all times relevant to the within action, Defendant Brasile was acting within the scope of his duties and under the authority as Fire Chief and acted under color or title of state or municipal public law or ordinance and supervised or controlled the treatment of all Latrobe Volunteer Firefighters.

21.     Defendant Brasile had the ultimate responsibility for complying with all federal and state laws, the City Code, Defendant Fire Department By-laws, the individual hose company by-laws and protecting the civil rights of all City of Latrobe firefighters.

22.     Defendant Charles McDowell, Jr. (hereinafter "Defendant McDowell") is an adult individual who, at all times relevant to the within action, served as President of Defendant Fire Department.

23.     At all times relevant to the within action, Defendant McDowell was acting within the scope of his duties and under the authority as Volunteer Fire Department President and acted under color or title of state or municipal public law or ordinance and represented all Latrobe volunteer firefighters and the hose companies.

24.     In his capacity as President of Defendant Fire Department, Defendant

McDowell had the duty to strictly abide by and enforce Department Fire Department By-laws and all hose company by-laws.

25.     In his capacity as President of Defendant Fire Department, Defendant McDowell had the duty to chair the Board of Appeals sitting in judgment over any member receiving a non-firefighting operations suspension or expulsion.

26.     Defendant McDowell had the further duty and obligation to comply with the Defendant Fire Department By-laws, including but not limited to Article 9 (4) ( c) that mandates that the Board of Appeals shall consist of seven (7) people including the Department President, Department First Vice President and one member elected from each hose company.

## FACTS GIVING RISE TO CAUSE OF ACTION

27.     The Latrobe Goodwill Hose Company No. 1 (hereinafter "Hose Company No. 1") is a corporation licensed under the non-profit corporation laws of the Commonwealth of Pennsylvania with its address at 390 Oak Street, Latrobe, Westmoreland County, Pennsylvania l5650.

28.     Hose Company No. 1 owns a property located at 300 Alexandria Street, Latrobe, Westmoreland County, Pennsylvania, including the structure, the contents within and a liquor license issued by the Pennsylvania Liquor Control Board.

29.     The By-laws for Hose Company No. 1 were adopted on April 12, 1998.

30.     The Latrobe City Code was adopted on April 23, 1996.

31.     Defendant Fire Department By-laws have been adopted by Defendant City by and through its City Code.

32.     At all times relevant to the within matter, Defendant Fire Department and

its hose companies had firefighters who were trained in the utilization of facial masks to combat fires without sustaining injury from smoke inhalation (hereinafter "masked firefighters").

33.    During the 2019 and 2020 calendar years, Defendant Brasile's conduct and fire safety issues were discussed on numerous occasions by Plaintiffs, their families and Latrobe residents.

34.    Pursuant to Defendant Fire Department By-laws, on November 7, 2019, Plaintiff N. Giovannagelo was nominated for the position of Latrobe fire chief, in opposition to Defendant Brasile and an election was scheduled for Thursday, December 5, 2019.

35.    On November 7, 2019, Defendant Brasile had a conversation with Plaintiff F. Giovannagelo, wherein he referred to a Hose Company No. 1 female firefighter as "a slut" and accused her of intentionally wearing tight clothes and dressing in a manner "to show off her camel t - - ."

36.    During this conversation, Defendant Brasile referred to two (2) Latrobe firefighters with dark facial complexions as being the hose company's "Mexicans."

37.    In the presence of other firefighters, Defendant Brasile, referred to a firefighter's wife as a "fat, f- - king, c - - t."

38.    On November 7, 2019, Plaintiff F. Giovannagelo directly confronted and challenged Defendant Brasile concerning Defendant Brasile's false accusations, policies, inappropriate comments and harassment of a female firefighter.

39.    Defendant Brasile had made defamatory, false and damaging accusations against Plaintiffs, including that Plaintiffs had responded to fire calls while intoxicated or under the influence of controlled substances.

40.     Plaintiff F. Giovannagelo further challenged Defendant Brasile to take disciplinary action if he felt it appropriate and to provide the accused firefighters, including the above-named Plaintiffs, a hearing/proceeding wherein they could respond to his false accusations and clear their names.

41.     On November 14, 2019, Plaintiff C. Giovannagelo openly complained that Defendant Brasile had held back the highest number of "masked firefighters" in the department, that the fire department is in need of a change in leadership and that he feared some resident of the city is going to be severely injured or killed in a fire because of Defendant Brasile's lack of leadership and ineffective safety policies.

42.     On numerous occasions, each of the above Plaintiffs, as Latrobe residents, had conversations with other Latrobe residents concerning fire safety matters and other concerns which were contemporaneous to and/or incorporated in each Plaintiff's speech as citizens on matters of public concern.

**Defendant Brasile's Interference - Application For Grant Monies**

43.     In December, 2019, Plaintiffs Blessing, C. Giovannagelo, F. Giovannagelo N. Giovannagelo and Assistant Fire Chief John D. Gessler (hereinafter "Assistant Chief Gessler") were engaged in the process of completing Hose Company No. 1's applications for grant monies, including a one hundred eighty thousand ($ 180,000.00) dollar Federal Emergency Management Agency (FEMA) grant to purchase lifesaving equipment and a five thousand ($ 5,000.00) dollar grant to purchase "turn out gear" for brush forest fires.

44.     The aforesaid grant monies were necessary for Defendant City to comply

with the mandates for firefighting operations and equipment set by the National Fire Protection

Association (hereinafter "NFPA").

45.     The NFPA establishes testing standards in order to determine the life span

and/or impose time limits on each piece of fire safety equipment.

46.     Failure to comply with the NFPA mandates subjects the Defendant City to

additional liability for fighting fires with unsafe/inadequate equipment and jeopardizes the City's

ability to obtain liability insurance.

47.     The utilization of firefighting equipment that fails NFPA standards further

creates safety risks for the residents and structures of Defendant City and subjects Defendant City

to civil liability for the negligent use of faulty firefighting equipment.

48.     On December 2, 2019, Defendant Brasile ordered the shutdown of Hose

Company No. 1.

49.     Defendant Brasile's unauthorized action violated the Latrobe City Code,

Defendant Fire Department By-laws and Hose Company No. 1 By-laws.

50.     Defendant Brasile's unauthorized shutdown and suspension removed

Plaintiffs Blessing, C. Giovannagelo, F. Giovannagelo and N. Giovannagelo and Assistant Chief

Gessler from the grant application process, adversely affected and severely jeopardized

Defendant City's ability to timely complete and file the grant applications.

51.     On December 2, 2019, Plaintiff  C. Giovannagelo spoke with Defendant

Wolford over the telephone and complained:

> a)      that Defendant Brasile's unauthorized shutdown of Hose
>         Company No. 1 and suspension of the seven (7) "masked
>         firefighters" had interfered with Defendant Fire Department

from securing the additional grant money and as a result, Defendant City will have to utilize defective equipment to fight fires;

b)      that all five (5) hose companies were struggling to "crew masked firefighters";

c)      that by barring Hose Company No. 1 its "masked firefighters" from responding to fire calls in the First Ward, Defendant Brasile had subjected the First Ward residents and structures to unnecessary fire risks;

d)      that his Uncle Dom and Aunt Lisa and their families reside in the First Ward;

e)      that his uncle (Plaintiff F. Giovannagelo) owns several properties with structures in the First Ward; and

f)      that Plaintiffs Blessing and Jones and their families reside in the First Ward.

52.     On December 2, 2019, at a special meeting of Hose Company No. 1, Plaintiff C. Giovannagelo complained about Defendant Brasile's negligent and irresponsible decision to bar Hose Company No 1 and its "masked firefighters" from responding to fire calls in the First Ward.

53.     At said meeting, Plaintiff C. Giovannagelo stated that the other hose companies were struggling to "crew masked firefighters" and by preventing the "masked firefighters" from Hose Company No.1 from responding to fire calls, Defendant Brasile had placed the entire city and its structures at risk.

54.     On December 2, 2019, Plaintiff F. Giovannagelo spoke with former Latrobe mayor, James Gebicki (hereinafter "Mr. Gebicki") and complained that:

a)      by unjustly suspending Plaintiffs Blessing, C. Giovannagelo and N. Giovannagelo, Defendant Brasile had recklessly obstructed

Defendant City's opportunity to obtain grant monies and purchase proper firefighting equipment to comply with NFPA standards;

b) Defendant Brasile had falsified his call response numbers in order to obtain a higher personal stipend;

c) Defendant Brasile had falsified fire call response statistics in order to exaggerate the Defendant City's ISO rating;

d) Defendant Brasile's falsifying personal and department call response statistics which may be illegal;

e) on several occasions Defendant Brasile had reported to be at the scene of a fire call when he was actually with Plaintiff away from the fire call scene; and

f) on more than one occasion, Defendant Brasile falsely reported to be at a fire scene, was in the presence of Plaintiff, had displayed to Plaintiff pornographic images that Defendant Brasile had downloaded to his cell phone and forwarded these images to firefighters who were on fire calls.

55. On December 2, 2019, Plaintiffs F. Giovannagelo and N. Giovannagelo complained to Defendant Wolford about Defendant Brasile's lack of leadership, lack of proper safety policies, reprehensible comments about women, including a firefighters wife, sexual harassment of a female firefighter, his delaying fire call responses and his jeopardizing Defendant City's ability to obtain grant monies in order to comply with NFPA standards.

56. Plaintiffs requested Defendant Wolford's intervention however, she refused to intervene and advised both Plaintiffs "you have by-laws, handle this yourself."

57. On December 3, 2019, Plaintiff Jones spoke with a group of Latrobe First Ward residents and discussed the safety risks to the community resulting from Defendant Brasile's conduct, including:

a) Defendant Brasile's shutdown of Hose Company No. 1 and suspension of seven (7) masked firefighters;

b) Defendant Brasile's negligently preventing Defendant City from obtaining grant money to purchase firefighting equipment which complies with NFPA standards;

c) Defendant Brasile's sexual harassment of a female firefighter and misogynistic attitude toward women;

d) Defendant Brasile's lack of proper safety policies;

e) Defendant Brasile's falsifying his personal response times to obtain a higher personal stipend;

f) Defendant Brasile's falsifying the department's call response times in order to inflate Defendant Fire Department's ISO rating;

g) Defendant Brasile's failure to personally inspect the fire hydrants within Defendant City; and

h) Defendant Brasile's false certification that one hundred (100%) percent of Defendant City's fire hydrants were functional when in Plaintiff's opinion, more than fifty (50%) percent of said fire hydrants were not functional.

58. During his conversation with the First Ward residents, Plaintiff Jones described the safety risks resulting from Defendant Brasile's false representations that all city fire hydrants were functional and operational.

59. Plaintiff Jones discussed with the First Ward residents the manner in which he had personally witnessed incidents of fire hydrant failure which were the direct result of the lack of proper fire hydrant inspection.

60. Plaintiff Jones further advised the First Ward residents that:

a) the lack of proper fire hydrant inspection and/or testing may lead to dirt or debris in the water line which may cause a

fire hydrant not to function at full capacity;

b)      a hydrant not functioning at full capacity could result in loss of water supply and an inability to effectively extinguish fires thereby causing serious injury or death to fire victims; and

c)      an improperly functioning fire hydrant may lead to a water main break which may shutdown other hydrants.

61.      Plaintiff Jones reminded the First Ward residents that he, his wife and family were also First Ward residents and that he shared in their safety concerns.

62.      On December 5, 2019, Defendant Brasile suspended seven (7) masked firefighters including Plaintiffs N. Giovannagelo and C. Giovannagelo.

63.      On December 5, 2019, Plaintiff Jones spoke with Bradenville, Pennsylvania fire Chief Mark Piantine (hereinafter "Chief Piantine") about the safety risks created by Defendant Brasile's above-described conduct.

64.      During said conversation, Chief Piantine advised Plaintiff Jones that as a result of Defendant Brasile's above-described conduct, the Bradenville Mutual Aid Fire Company would no longer request firefighting resources from Latrobe nor would said company respond to requests from Latrobe for assistance.

65.      On December 5, 2019, Plaintiff Blessing stated to former Defendant Fire Department President Tom McMaster (hereinafter "Mr. McMaster") that "something needs to be done, we are trying to make a leadership change because our chief is out of control to the point of making sexual comments about the female firefighter to several people."

66.      On December 6, 2019, Plaintiff Jones spoke with Assistant Chief Gessler and other residents and discussed the safety risks created by Defendant Brasile's interference

with the grant application process and the Bradenville fire company's decision not to request assistance or to respond to requests for assistance from the Defendant Fire Department.

67.     Plaintiff Jones further complained that Defendant Brasile's actions had placed two (2) communities at risk in the event of a fire.

68.     Plaintiff Jones further complained to Assistant Chief Gessler that, without the proper safety and lifesaving equipment, the fire department's ability to safely provide fire protection to the community has been greatly diminished.

69.     On December 8, 2019, Justin Hayes, a Latrobe resident, said to Plaintiff Blessing, "He (Defendant Brasile) took away firefighters from a city that has large buildings such as the hospital, the brewery and Latrobe Steel. I work at a large facility, what happens if that catches fire? There's a lot of people in those buildings and if there's no one to go in and rescue them, that is a lot of lives at stake."

70.     On December 9, 2019, Joe Mulheren, a Latrobe resident, stated to Plaintiff F. Giovannagelo, "By his (Defendant Brasile) suspending so many of the firefighters from Company 1 are there enough left to handle the emergencies in the First Ward?"

71.     On December 9, 2019, Plaintiff C. Giovannagelo had a conversation with Thomas P. Schultheis, Jr. (hereinafter "Mr. Schultheis"), a Unity Township EMA Director, wherein they discussed Unity Township Mutual Aid Fire Company's, request for resources from Defendant Fire Department on fire calls and the problems Defendant Brasile created with the Bradenville Fire Department.

72.     Plaintiff C. Giovannagelo advised Mr. Schultheis, "Chief Brasile is holding us on calls and isn't responding to the requests of the mutual aid companies. I am

concerned for the residents of your district, because Chief Brasile, for no good reason, is withholding our resources to help fight the fires in your district."

73.     Comments from Plaintiffs Blessing, Jones and C. Giovannagelo to Mr. McMaster, Chief Piantine, Assistant Chief Gessler and Mr. Schultheis were reported to Defendant Brasile.

74.     On December 10, 2019, Jeff Powers, a Latrobe resident stated to Plaintiff N. Giovannagelo, "By shutting down Hose Company No. 1, the strongest station in the city and then suspending seven of the strongest skilled firefighters in the city, Mr. Brasile took away people that can run in and save people from burning buildings. People are going to get hurt because of his actions."

75.     Plaintiffs, other firefighters and Latrobe residents attended the December, 2019, Latrobe City Council Meeting.

76.     Prior and subsequent to said meeting, Plaintiffs spoke with council members about the safety risks to the community caused by Chief Brasile's above-described conduct.

77.     Individual members of city council, including members of the Fire and Safety Committee stated that they were unaware Defendant Brasile's above-described conduct.

78.     Before, during and after said meeting, Plaintiff N. Giovannagelo made public comments to Defendant Wolford and members of City Council about Defendant Brasile's lack of leadership and safety policies, failure to respond to fire calls and his negligent and irresponsible removal of one-third of Defendant City's best trained masked firefighters.

79.     Plaintiff N. Giovannagelo accused Defendant Brasile of dishonesty in

tabulating his personal response call numbers, of creating false and exaggerated statistics for the purpose of obtaining ISO grants and of placing the residents and structures of the Defendant City, including the First Ward, at risk of great harm due to fire.

80. At the close of said meeting, Defendant Wolford instructed Plaintiffs to "handle the matter internally" and to "follow the Fire Department and/or Hose Company No. 1 By-laws."

81. In accordance with Defendant Department By-laws and the directive of Defendant Wolford, a meeting before the Defendant Fire Department membership was scheduled for January 2, 2020, in order to address possible discipline to Defendant Brasile in the form of suspension or removal as fire chief.

82. On December 14, 2019, Plaintiff Jones spoke with Assistant Chief Gessler and repeated his concerns about the above-described safety risks to his family, Plaintiff Blessing's family, the Giovannagelo family and all First Ward residents as a result of Defendant Brasile's above-described conduct.

83. Plaintiff Jones further complained that, as a result of Defendant Wolford's refusal to intervene, all Latrobe residents were subjected to an unnecessary, increased risk of damage, injury or death due to fire.

84. On December 15, 2019, Tiara Rudy, a Latrobe resident, stated to Plaintiff F. Giovannagelo, "So, because he (Defendant Brasile) is going after one person for numbers, I have to worry about my safety because he shut the station down."

85. On December 15, 2019, Jeff Smetanka, a Latrobe resident, stated to Plaintiff F. Giovannagelo, "With there already being a shortage of firefighters and John

(Defendant Brasile) suspending those firefighters, I don't have confidence that there are enough firefighters to put out fires in the city."

86.     On December 15, 2019, Plaintiff Jones had a second conversation with Chief Piantine, wherein he discussed his prior concerns about the defective fire hydrants, lack of updated safety and lifesaving equipment, Defendant Fire Department's severely limited resources and the safety risks to his family and the Latrobe and Bradenville communities resulting from Defendant Brasile's above-described actions.

87.     On December 15, 2019, Plaintiff N. Giovannagelo stated to Mr. McMaster and other firefighters that, "I have proof that Chief Brasile has been falsifying the numbers on fire calls, he told us that it was because he wanted to maintain Latrobe's ISO rating."

88.     Plaintiff N. Giovannagelo accused Defendant Brasile of being dishonest and claiming credit for responding to fire calls for which he had not responded and for attempting to oversee fire calls from his vehicle and other locations away from the fire call location.

89.     Plaintiff N. Giovannagelo advised Mr. McMaster that he believed Defendant Brasile's conduct, unnecessarily created safety risks to the Latrobe community and may be illegal.

90.     On December 19, 2019, Phil Hood, a Latrobe resident, said to Plaintiff F. Giovannagelo, "You (Hose Company No. 1) ran calls for other stations in the city because they couldn't crew. By his (Defendant Brasile) shutting the station down and suspending those guys, two areas of the city have their safety from fires compromised."

91.     On January 2, 2020, Devin Grimm, a Latrobe resident, stated to Plaintiff

N. Giovannagelo, "One man's (Defendant Brasile) ego has put the entire city at risk. Shutting Company No.1 down causes a longer response time for fires in the First Ward. The longer a fire burns, the more property damage done and the longer someone trapped inside has to wait to be rescued.

92.     On January 2, 2020,  Plaintiff Blessing spoke with Robert Forish (hereinafter "Mr. Forish") a Latrobe City councilman and a member of Council's Fire and Safety Committee and stated, "I am concerned about the safety of our community because of the selfish, negligent and dishonest conduct of Chief Brasile."

93.     Plaintiff Blessing complained that:

a)      Defendant Brasile had recklessly held back Hose Company No. 1 from responding to a gas leak call which ultimately resulted in three (3) residents becoming seriously ill from exposure to gas;

b)      six (6) firefighters were available and located within a half mile of the gas leak call and were prohibited from responding to said call by Defendant Brasile;

c)      Defendant Brasile was not present and refused to appear at the scene of the gas leak when he ordered the firefighters not to respond to the call; and

d)      on a too often basis, Defendant Brasile negligently and recklessly has prohibited the five (5) hose companies from responding to fire calls in their own geographic areas.

94.     Mr. Forish advised Defendant Brasile and other members of Latrobe City Council of Plaintiff Blessing's statements.

95.     On January 2, 2020, at a meeting of the entire membership of Defendant Fire Department, Plaintiff N. GIovannagelo stated, "Chief Brasile has continued to make unsafe decisions. He has held the hose companies back on calls, suspended much needed masked men,

suspended line officers who supervised fire calls and falsely claiming to be present for fire calls

when he was not there, including a call where a firefighter was injured."

96.    Plaintiff N. GIovannagelo further stated that "The taxpayers of this city

pay for fire protection and because Chief Brasile keeps making these decisions, their safety is

compromised."

97.    On January 2, 2020, Plaintiff N. Giovannagelo spoke with Mr. Forish,

and stated, "As a councilman and a member of the Fire Safety Committee, you need to know that

the safety of this city is at risk. When Chief Brasile shutdown Hose Company No. 1 and

suspended our members, other people refused to support the fire department efforts because they

feared retaliation from Chief Brasile."

98.    Plaintiff N. Giovannagelo further stated "Council needs to take a hard

look at Chief Brasile's reporting of his fire calls. He's taking credit for a lot of calls he was never

at and that is a matter of public safety. He is further lying to maintain the Department's ISO

rating, which is clearly dishonest and may be illegal."

99.    At the meeting on January 2, 2020, Plaintiff Jones repeated his complaints

about Defendant Brasile's lack of proper safety policies, failing to properly test all fire hydrants,

falsely reporting his and department response call statistics, falsely representing that one hundred

(100) percent of the Latrobe fire hydrants were fully operational and his interference with the

grant application process, which compromised Defendant City's ability to procure proper safety

and lifesaving equipment.

100.    At said meeting, Plaintiff Jones stated that he had previously advised

members of city council, Latrobe policymakers, other firefighters and community residents that

the fire hydrants in Defendant City were inadequate for fighting fires.

101.    Plaintiff Jones further stated that Defendant Brasile had intentionally falsified the number of fire hydrants that were fully operational.

102.    At the meeting on January 2, 2020, Plaintiff F. Giovannagelo stated that Defendant Brasile's falsifying his fire call response numbers, falsely claiming to be at fire calls wherein he was absent, falsifying the department's ISO rating and approving defective fire hydrants necessitated a full investigation and Defendant Brasile's suspension as fire chief.

103.    At the close of the aforesaid meeting, over two-thirds of the membership in attendance voted to conduct a full investigation into Defendant Brasile's conduct and to suspend him as fire chief.

104.    On January 3, 2020, Mr. McMaster advised Plaintiffs that Defendant Wolford had intervened on Defendant Brasile's behalf, ordered that the vote of the membership to suspend Defendant Brasile be overturned and ordered that the Defendant City validate the December, 2019, election results, wherein Defendant Brasile removed his opponent from the ballot and declared himself the fire chief by acclamation.

105.    Neither Plaintiffs nor any member of the Defendant Fire Department received any official notice or written correspondence from Defendant Wolford or City Council nor did they receive any legal opinion justifying the Defendants' reversal of the lawful membership vote to suspend Defendant Brasile.

106.    On January 6, 2020, prior to, during and after the Latrobe City Council meeting, Plaintiff Blessing directed comments to Defendant Wolford and members of city council, including:

a)      that Defendant Brasile had claimed to be present for fire calls for which he was absent;

b)      that Defendant Brasile had claimed to be present for and supervising a fire call, wherein he was absent and a firefighter was seriously injured;

c)      that Defendant Brasile had falsified his own and Department fire call statistics for his own personal gain and to inflate the Defendant City's ISO rating, which may be illegal;

d)      that Defendant Brasile lacked proper safety policies, guidance and leadership;

e)      that Defendant Brasile had recklessly interfered with the grant application process;

f)      that Defendant Brasile had engaged in sexual harassment of a female firefighter; and

g)      that Defendant Brasile's negligence, lack of leadership, ineffective safety policies had placed Plaintiff Blessing, his family, First Ward residents and all Latrobe residents at risk of serious injury or death due to fire.

107.    At said meeting, each of the above-named Plaintiffs objected to Defendants' reversal of Defendant Fire Department's lawful vote to suspend Defendant Brasile.

108.    Plaintiffs further objected to Defendants' acceptance and validation of the illegal vote for fire chief taken in December, 2019, wherein Defendant Brasile suspended and removed his opponent from the ballot and claimed victory by acclamation.

109.    At the close of said meeting, Defendant Wolford directed Plaintiffs to follow Defendant Fire Department By-laws and stated, " If you want a new chief, you need a new vote."

110.    On January 7, 2020, after reading the events of the Latrobe City Council

meeting as reported in the Latrobe Bulletin, Stephanie Smith, a Latrobe resident, approached Plaintiff N. Giovannagelo and stated, "I used to be a member of the Fire Department Support Services. John (Defendant Brasile) threw me out of the department because I shared a post about another fire department's fundraiser on the support services' Facebook page. After he shut down the station and suspended those people, I can see he hasn't changed. It scares me that we are losing firefighters because, if a fire starts in somebody's home and there is no one to come and put it out, people can die."

111.   On January 9, 2020, a membership meeting of Hose Company No. 1 was scheduled and the Honorable Joseph Petrarca (hereinafter "Representative Petrarca"), serving the 55th Legislative District of the Pennsylvania House of Representatives, including Defendant City was an invited guest speaker.

112.   Prior to and subsequent to said meeting, Plaintiffs Blessing and C. Giovannagelo spoke directly with Representative Petrarca.

113.   Plaintiff Blessing advised Representative Petrarca of his specific above-described complaints about Defendant Brasile's conduct.

114.   Plaintiff Blessing further advised Representative Petrarca about the additional risks to the Latrobe community resulting from Defendant Brasile's suspension of the seven (7) masked firefighters.

115.   On January 9, 2020, Plaintiff Blessing appeared before a meeting of the membership of Hose Company No. 1 and openly expressed the following concerns:

     a)    that Defendant Brasile had claimed to be present for and supervising a fire call, wherein he was actually absent and a firefighter was seriously injured;

b)      that Defendant Brasile lacked proper safety policies, guidance
and leadership;

c)      that Defendant Brasile was unwilling to afford firefighters
additional, necessary rescue training; and

d)      as a result of his ineffective safety policies and lack of leadership,
Defendant Brasile had placed residents of the Latrobe community
at risk of serious injury or death from fire.

116.    Plaintiff  C. Giovannagelo complained to Representative Petrarca about

Defendant Brasile's sexual harassment of a female firefighter, that Defendant Brasile had

regularly and openly discussed the female firefighter's body piercings in the presence of male

firefighters and referred to her as "metal face."

117.    Plaintiff  C. Giovannagelo further complained that Defendant Brasile had

made lewd references to the female firefighter's body and manner of dress, remarked that "she

must give a great blow job" and that he could see her "camel t - -" by the manner in which she

dressed.

118.    At the close of their discussions, Representative Petrarca assured Plaintiffs

Blessing and C. Giovannagelo that he would personally discuss their concerns with Defendant

Wolford and City Council.

119.    On February 6, 2020, prior to a meeting of the Defendant Fire Department

membership, Plaintiff  F. Giovannagelo spoke with Mr. Forish, Secretary Steve Tulenko,

(hereinafter "Mr. Tulenko"), Treasurer Don Stewart (hereinafter "Mr. Stewart") and repeated his

prior complaints that:

a)      Defendant Brasile had jeopardized the safety of the citizens and
structures of the community by improperly suspending seven (7)
"masked firefighters";

b)     Defendant Brasile had falsely represented that he had responded to and was present for fire calls for which he was absent, including one call where a firefighter was seriously injured;

c)     Defendant Brasile was falsifying his personal call response times in order to be paid a higher stipend and to inflate the department's ISO rating for grant monies, which may be illegal;

d)     that Defendant Brasile had made inappropriate personal, sexual comments and engaged in sexual harassment of a female firefighter at Hose Company No. 1; and

e)     the female firefighter had complained about Defendant Brasile's conduct and stated that she feared responding to fire calls wherein Defendant Brasile was present.

120.     At the February, 2020 meeting of the Defendant Fire Department attended by thirty-four (34) fire department members, a motion was made to investigate Defendant Brasile's wrongful conduct and to hold a new election for fire chief.

121.     Defendant Fire Department members in attendance voted 34-0 in favor of holding a new election for fire chief.

122.     In accordance with the applicable By-laws of Defendant Fire Company, representatives of the five (5) hose companies were instructed to inform their membership of the election for fire chief scheduled for Thursday, March 5, 2020 and that a daytime and evening vote would be taken.

123.     On February 27, 2020, Plaintiff Jones spoke with Assistant Chief Gessler, Latrobe City Manager Michael Gray (hereinafter "City Manager Gray") and city councilman Ralph Jenko (hereinafter "Mr. Jenko"), and repeated his prior, above-described complaints including that:

a)      Defendant Brasile had intentionally falsified and
        exaggerated response call numbers to give the City a
        higher ISO rating and obtain higher grant monies, which
        may be illegal;

b)      Defendant Brasile had falsified his personal response
        call numbers in order to secure higher personal stipend
        payments, which may be illegal;

c)      flow tests had not been performed properly on
        every fire hydrant within the city;

d)      in his opinion fifty (50%) percent of the fire hydrants
        would not pass a flow test;

e)      fire hydrants were not flushed properly;

f)      Defendant Brasile was not present for the flow tests;

g)      That Defendant Brasile had falsified the fire hydrant
        flow test results to obtain a higher ISO rating;

h)      Defendant Brasile falsely recorded that he was present
        for a fire call on February 19, 2019, wherein he was
        absent and a firefighter was seriously injured; and

i)      Defendant Brasile had inappropriately interfered with
        and impeded the grant application  process;

**Defendant Wolford's Misrepresentations**

124.    On March 5, 2020, Defendant Wolford advised Mr. McMaster

that the City had obtained legal opinions from the City Solicitor and the Fire Department

Solicitor declaring that the election scheduled for March 5, 2020, was illegal.

125.    On March 5, 2020, members of the Defendant Fire Department

were provided with copies of the aforementioned legal opinions, however, neither legal

opinion declared the scheduled March 5, 2020 election to be illegal, invalid or contrary to any

specific City Code, Defendant Fire Department or hose company by-laws nor did they direct that the election be postponed or cancelled.

126. Attorney Houser's legal opinion recommended that the Defendant Fire Department resolve any issues internally and Attorney Greiner's opinion confirmed that, according to the City Code, the fire chief may be removed for just cause.

127. On March 5, 2020, Plaintiff Blessing stated to Mr. McMaster, Mr. Tulenko and Mr. Stewart, "If Chief Brasile continues to hold back the various companies from calls, including structure fire calls and if he continues to improperly suspend masked firefighters, our entire city and its residents are at great risk from future fires, especially structural fires."

128. On March 5, 2020, Plaintiff C. Giovannagelo stated to Mr. McMaster, Mr. Tulenko and Mr. Stewart that, "Chief Brasile works a full-time job and then falsely claims that he responds to 98% or our calls. He is absent from a great deal of those calls and is falsifying his response numbers in order to get a larger, personal stipend payment.

129. Plaintiff C. Giovannagelo further accused Defendant Brasile of falsifying the ISO numbers, failing to procure proper fire and safety equipment and falsifying the number of fire hydrants that were operational.

130. On March 5, 2020, Defendant Fire Department conducted an election for fire chief, wherein Plaintiff N. Giovannagelo and Defendant Brasile were the two (2) candidates.

131. The aforesaid election was to have initially occurred in December, 2019, however, Defendant Brasile illegally suspended Plaintiff N. Giovannagelo, removed his name from the ballot and declared victory by acclamation.

132. The election for Fire Chief on March 5, 2020, resulted in thirty-two (32)

votes for Plaintiff N. Giovannagelo and seventeen (17) votes for Defendant Brasile and as a result, Plaintiff N. Giovannagelo was lawfully elected Fire Chief for Defendant Fire Company.

133. Subsequent to the posting of the election results, Defendant Brasile declared that said election was invalid because all of his supporters did not vote and had they voted, he would have won the election.

134. On March 5, 2020, Plaintiff N. Giovannagelo had a conversation about public safety with City Manager Gray wherein he stated, "Chief Brasile is holding Hose Company No. 1 on calls and not just small stuff. He is holding us on reported structure fires. On one fire call, we had eleven (11) firefighters, most of them masked men, sitting in our station. Chief Brasile held them from the call before he ever arrived at the fire scene. His actions created a grave safety risk for our community."

### Defendant Wolford's Intervention on Behalf of Defendant Brasile

135. Subsequent to the legally held election on March 5, 2020, Mr. McMaster, in his capacity as President of Defendant Fire Company, spoke before a meeting of the entire fire department, including Plaintiffs.

136. Mr. McMaster advised those who were in attendance that Defendant Wolford had intervened on behalf of Defendant Brasile and nullified the results of the aforesaid legally held election.

137. At said meeting, Mr. McMaster said the following:

> "I have a letter from Rosie stating that she will not
> Honor the results of the March election because the
> election is illegal."

138. Subsequent to advising those in attendance of Defendant Wolford's

intervention on behalf of Defendant Brasile and nullification of the legally held election, Mr. McMaster read Defendant Wolford's letter in its entirety.

139.    Joe Kuhns, a lifetime firefighter member, Robert Machen, a lifetime firefighter member, Tyler Haase, an active firefighter, Ken Allan, an active firefighter and Mr. Forish were present when Mr. McMaster made his announcement concerning Defendant Wolford's intervention on behalf of Defendant Brasile.

140.    On March 6, 2020, Plaintiffs were advised by Mr. McMaster that neither Defendant Wolford nor Defendant City would accept the results of the election on March 5, 2020.

141.    Neither Mr. McMaster nor any representative/policymaker for the Defendant City provided legal justification for not accepting a vote which was scheduled and taken in strict compliance of all applicable by-laws.

142.    During and subsequent to the aforesaid meeting, Plaintiff's discussed Mr. McMaster's announcement and Defendant Wolford's letter with Mr. Kuhns, Mr. Machen, Mr. Haase, Mr. Forish and Mr. Allan.

143.    On March 6, 2020, Plaintiff F. Giovannagelo met with members of Hose Company No. 1 in order to review the legal opinions from Attorneys Greiner and Houser and Defendant Wolford's misrepresentations as to the contents of both legal opinions.

144.    On March 6, 2020, Plaintiff F. Giovannagelo, in his capacity as President of Hose Company No. 1, called for a Special Meeting for Sunday, March 8, 2020, in order to take a membership vote on whether to expel Defendant Brasile as a member of Hose Company No. 1 for just cause.

145.    In accordance with the By-laws of Hose Company No. 1, Plaintiffs Blessing, Jones and F. Giovannagelo made telephone calls to every member of Hose Company No. 1, advised every member as to the date, time and place of the Special Meeting and notified every member that a vote on whether to expel Defendant Brasile as a member of Hose Company No. 1 for just cause would be taken at the Special Meeting.

146.    On Sunday, March 8, 2020, a Special Meeting of Hose Company No. 1 took place and was attended by approximately twenty-two (22) members.

147.    At said meeting, a motion was made to expel Defendant Brasile as a member of Hose Company No. 1.

148.    By a vote of 22-0, the membership voted to expel Defendant Brasile from Hose Company No. 1.

149.    On March 9, 2020, Plaintiff C. Giovannagelo, in his capacity as Hose Company No. 1 Secretary, prepared a letter notifying Defendant Brasile of the unanimous vote taken on March 8, 2020, to expel Defendant Brasile from the membership of Hose Company No. 1.

150.    The aforesaid letter was signed by Plaintiff C. Giovannagelo, witnessed by Plaintiffs Blessing and Jones, notarized and forwarded to Defendant Brasile by certified mail. A copy of said letter is attached hereto, marked Exhibit "A" and incorporated herein.

151.    On March 9, 2020, Plaintiff N. Giovannagelo appeared at a Latrobe City Council monthly meeting and stated before council and the media that:

   a) "Chief Brasile has held Hose Company No. 1 on fire calls, even some close to our station. This is not safe for our community";

b)   Defendant Brasile lacked leadership, supervision
and proper safety policies to protect the community;

c)   Defendant Brasile was dishonest and falsified
personal fire call responses to obtain greater personal
stipend payments, which may be illegal;

d)   Defendant Brasile falsely inflated the city wide call
responses in order to inflate the City's ISO rating for federal
grant money, which may be illegal;

e)   Defendant Brasile had allowed more than fifty (50%)
per cent of the fire hydrants to remain dysfunctional, pumping
rusty water through the fire trucks at an unsafe intensity level;

f)   Defendant Brasile had improperly interfered and delayed
the grant application process; and

g)   he and his family reside inside the City of Latrobe and are at
risk due to Defendant Brasile's conduct.

152.   Prior to March 10, 2020, Hose Company No. 1 Assistant Chief Gessler, engaged in speech as a citizen on matters of public concern concerning wrongful conduct of Defendant Brasile.

153.   Assistant Chief Gessler's speech as a citizen included, Defendant Brasile's reckless and unjustified suspension of masked firefighters which created an unnecessary fire related risk to the citizens and structures of Defendant City.

154.   Assistant Chief Gessler complained that Defendant Brasile was falsifying his own personal call responses in order to increase his stipend payment and was further falsifying department call response numbers in order to obtain grant money.

155.   Assistant Chief Gessler further complained about the safety risks created by Defendant Brasile's precluding Hose Company No. 1 firefighters from responding to fire calls

in close proximity and in the jurisdiction of Hose Company No. 1.

156.   Assistant Chief Gessler further complained that Defendant Brasile had falsely claimed to have filed an application for a SAFER grant as a contrived, false reason to suspend Hose Company No. 1 for a period of three (3) days and to retaliate against and suspend seven (7) individual members, including Plaintiffs C. Giovannagelo and N. Giovannagelo.

157.   Assistant Chief Gessler made the aforesaid accusations publicly at several meetings of the Latrobe City Council, monthly meetings of the Defendant Fire Department and at meetings of Hose Company No. 1.

158.   As a direct retaliation for Assistant Chief Gessler's citizen's speech on matters of public concern, Defendant Brasile expelled Assistant Chief Gessler from the Defendant Fire Department. A copy of Defendant Brasile's expulsion letter is attached hereto, marked Exhibit "B" and incorporated herein.

159.   As a result of Defendant Brasile's illegal expulsion of Assistant Chief Gessler, all work on the federal grant applications ceased and Defendant City failed to timely process the FEMA grant application for lifesaving fire and safety equipment and turnout gear for brush forest fires.

160.   As a result of the unanimous vote to expel Defendant Brasile for just cause on March 8, 2020, City Manager Gray, by letter dated March 10, 2020, advised Plaintiff N. Giovannagelo that Latrobe City Council had formed a committee " to investigate the allegations made for the removal of Fire Chief John Brasile with cause."

161.   The aforesaid letter further requested " a written complaint with all

supporting documents alleging the allegations for removal of cause."  A copy of said letter is attached hereto, marked Exhibit " C" and incorporated herein.

162.    On March 13, 2020, David Beyers, a Latrobe resident, approached Plaintiff Jones and stated, "Our property and residents are subject to danger if he (Defendant Brasile) continues his reckless actions of shutting down stations and suspending and expelling firefighters. It depletes an already short staffed fire department."

163.    On March 13, 2020, as a result of the Covid-19 pandemic, the City of Latrobe was declared to be in the "red" area and all citywide, non-essential businesses were suspended by Defendant Wolford.

164.    As a result of the Covid-19 pandemic, the letter/notice of expulsion to Defendant Brasile could not be personally delivered.

165.    As a further result of the Covid-19 pandemic, Plaintiffs were delayed in meeting with the City Council committee investigating Defendant Brasile's removal for cause and supplying the requested information.

166.    On March 17, 2020, Defendant  Fire Department received a letter from Mr. Gray advising that Defendant City had declared Defendant Brasile to be its fire chief.

167.    According to the terms of Mr. Gray's letter, Defendants had validated the results of the December, 2019 election, wherein Defendant Brasile removed Plaintiff N. Giovannagelo's name from the ballot and ran unopposed.

168.    As per Mr. Gray's letter, Defendant City further refused to acknowledge or abide by results of the election for fire chief on March 5, 2020, which was conducted in strict compliance with all applicable by-laws.

169.    Defendants further ignored the results of the legal special election on March 8, 2020, wherein Defendant Brasile was expelled as a member of Hose Company No. 1, and disqualified from serving as fire chief for a minimum period of one (1) year. A copy of Mr. Gray's letter is attached hereto, marked Exhibit "D" and incorporated herein.

170.    On April 15, 2020, Sean Zitterbart, a Latrobe resident, approached Plaintiff Jones and stated, "I am concerned for the firefights of the city who are seeking justice. If they are not being listened to, would city authorities do the same to other citizens' complaints?"

171.    On April 24, 2020, Curk Frye, a Latrobe resident, after listening to a radio conversation between Defendant Brasile and Plaintiff N. Giovannagelo, approached Plaintiff N. Giovannagelo and stated, "The fire department is going to keep losing people if he (Defendant Brasile) doesn't stop talking to people like that. He's chased quite a few people away from the department because of the way he treats people. The department keeps getting smaller and smaller and there's nobody to replace them. Our city is in trouble if we don't have firefighters."

172.    On April 25, 2020 and May 5, 2020, Plaintiff Jones had conversations with Chief Piantine about safety issues involving the Latrobe and Bradenville communities wherein they discussed:

a)    the dangerous conditions existing as a result of the faulty fire hydrants;

b)    the lack of proper safety and lifesaving equipment;

c)    that faulty fire hydrants were pumping rust-filled water through the Latrobe fire vehicles;

d)    Defendant Brasile's absence from an overwhelming number of fire calls;

e)      that Defendant Brasile had manipulated and exaggerated his fire response numbers and the city's ISO rating;

f)      that Defendant Brasile without just cause, had suspended seven (7) masked firefighters from responding to fire calls, structural or otherwise; and

g)      that Defendant Brasile had negligently interfered with the grant application process, wrongfully expelled Assistant Chief Gessler and precluded Defendant City from applying for and received FEMA grant money for fire safety equipment and turnout gear for brush forest fires.

173.      In May, 2020, a fire occurred in the vicinity of Plaintiff Blessing's residence and less than a half mile from Hose Company No. 1.

174.      Plaintiff Blessing's neighbors and other residents of the First Ward spoke with Plaintiff Blessing about the Defendant Fire Company's response to the fire call and safety issues resulting directly from Defendant Brasile's negligent directives.

175.      In May, 2020, Plaintiff Blessing spoke to Mr. Forish, in his capacity as a city councilman and a representative of the Fire and Safety Committee, and complained that:

a)      Defendant Brasile had prohibited and delayed all five (5) fire companies from responding to the fire near Plaintiff Blessing's home until such time as that Defendant Brasile arrived at the fire scene;

b)      Defendant Brasile had not arrived at the fire scene for an excruciatingly long period of time after the fire call;

c)      Defendant Brasile's reckless and negligent action had placed Plaintiff Blessing, his family, his residence and his neighbors at unnecessary risk of serious physical injury, death and or destruction of property due to fire; and

d)      Plaintiff Blessing's family and neighbors had confronted him concerning safety issues resulting from Defendant Brasile's

lack of proper safety policies and negligent and/or reckless directives.

176.　On May 11, 2020, Plaintiff Jones was advised by Chief Piantine that, due to Defendant Brasile's above-described conduct and the resulting safety risks, the Bradenville firefighters will not respond to fire calls for assistance from the Defendant City nor will they allow Defendant Brasile to place them in harm's way.

177.　Plaintiffs Blessing and F. Giovannagelo advised Mr. Forish and other employees/residents of Defendant City of Plaintiff Jones' conversation with Chief Piantine.

178.　On May 15, 2020, Defendant City and Westmoreland County were declared to be in the Covid-19 "yellow zone."

179.　On May 15, 2020, a constable served Defendant Brasile with the previously undelivered certified letter, notifying Defendant Brasile that he had been expelled from Hose Company No. 1.

180.　As a result of the aforesaid letter and in an attempt to subvert the applicable by-laws and remain as fire chief, Defendant Brasile advised Mr. Gray and Defendants that he had transferred from Hose Company No. 1 to Hose Company No. 2 and was eligible to remain as fire chief.

181.　Defendant Brasile never followed the applicable by-laws and procedures to effectuate a transfer from Hose Company No. 1 to Hose Company No. 2 or any other hose company and therefore was not legally eligible to serve as fire chief.

182.　On May 22, 2020, Hose Company No. 1 received a letter from Mr. Gray advising that Defendant City had determined that Defendant Brasile was eligible to remain as fire

chief.

183.     Mr. Gray's letter was not accompanied by any legal opinion to support Defendants' decision concerning Defendant Brasile's status as fire chief. A copy of Mr. Gray's letter is attached hereto, marked Exhibit "E" and incorporated herein.

184.     On May 22, 2020, Plaintiffs openly challenged City Manager Gray and City Council for not following through with the letter of March 10, 2020, concerning the removal of Defendant Brasile from Hose Company No. 1 for cause.

185.     On May 22, 2020, each of the above-named Plaintiffs advised other firefighters, members of City Council, employees and residents of Defendant City that they intended to appear at the next council meeting to demand that council follow through on the letter dated March 10, 2020 and to advise Council of their intent to challenge Defendant City's unlawful decision to retain Defendant Brasile as fire chief.

186.     On May 22, 2020, the above Plaintiffs openly discussed their justification for taking corrective action and again confirmed that Defendant Brasile had been removed for just cause, which included:

> a)     Defendant Brasile's misogynistic attitude, reprehensible comments about women, including a female firefighter and the wife of a male firefighter;
>
> b)     Defendant Brasile's sexual harassment of a female firefighter;
>
> c)     Defendant Brasile's lack of proper policies, leadership, ability to procure proper fire and safety equipment and to provide proper training for firefighters;
>
> d)     Defendant Brasile's dishonesty in falsifying his personal  fire call numbers in order to increase his personal stipend payments,

which may have been illegal;

e)    Defendant Brasile's dishonesty in falsifying ISO numbers in order to illegally procure higher grant monies, which may have been illegal;

f)    Defendant Brasile's recklessness and lack of leadership in certifying defective fire hydrants as being fully operational;

g)    Defendant Brasile's failure to properly respond to a fire call wherein a firefighter was seriously injured;

h)    Defendant Brasile's failure to properly respond to a gas leak emergency, whereby several citizens became seriously ill from gas inhalation;

i)    Defendant Brasile's holding back individual hose companies, including Hose Company No. 1, from responding to fire calls in a close geographic location to each hose company;

j)    Defendant Brasile's abuse of a firefighter from Crabtree, Pennsylvania and his verbally assaulting the fire chief from Whitney, Pennsylvania;

k)    Defendant Brasile's verbally and physically assaulting a firefighter from Derry, Pennsylvania, who, after listening to Defendant Brasile's broadcasts over the fire call/low band radio openly accused Defendant Brasile of being unprofessional;

l)    Defendant Brasile's attempting to supervise fire calls while being on vacations in the states of South Carolina and Arizona;

m)    Defendant Brasile's prohibiting all five (5) hose companies from responding to a fire calls until he arrived at the fire scenes;

n)    Defendant Brasile's ongoing pattern of late arrivals to the scenes of fire calls, thereby unnecessarily delaying the responses from the hose companies;

o)    Defendant Brasile's willful interference with the grant application process, including his expulsion of Assistant Chief Gessler, which prevented Defendant City from meeting the grant application and obtaining funds to purchase lifesaving fire equipment and

-37-

turnout gear for brush forest fires; and

p) that surrounding fire departments, including Bradenville, were reluctant or refusing to respond to Latrobe fire calls for assistance due to Defendant Brasile's conduct.

187. On May 27, 2020, as a direct retaliation for Plaintiff's above- described protected citizen's speech on matters of public concern and in further violation of the Latrobe City Code, Defendant Fire Department By-laws, and the Hose Company No. 1 By-laws, Defendant Brasile illegally expelled Plaintiffs from Defendant Fire Company.

**Lack of Due Process - Defendant Brasile's Defective Letters of Expulsion**

188. Defendant Brasile's expulsion of Plaintiffs was not preceded by any notice, progressive discipline or due process of any kind and contained false, fabricated, nonsensical, pretextual reasons for each expulsion.

189. In violation of the Latrobe City Code, Defendant Fire Department By-laws and Hose Company No. 1 By-laws, Defendant Brasile's expulsion letters falsely represented that Plaintiffs' appeal had to be made directly to him. Copies of the expulsion letters are attached hereto marked as Exhibit "F" and incorporated herein.

190. After learning about Defendant Brasile's illegal expulsion of Plaintiffs, Latrobe residents continued to speak with Plaintiffs about their community safety concerns.

191. On May 30, 2020, Eric Schaffer, a Latrobe resident, approached Plaintiff Jones and stated, "I am concerned that Hose Company No. 1 will not be able to operate in the event of an emergency in the city, especially with it being the closest company to the Latrobe Brewery. With the large number of employees and flammable products at the Brewery, it is important that there be a quick response in the event of an emergency."

192.    In response to the aforesaid illegal expulsion letters, on June 4, 2020, Plaintiffs hand-delivered letters of appeal to Defendant Brasile demanding that he recuse himself from any appeal process. Copies of Plaintiffs letters are attached hereto marked Exhibit "G" and incorporated herein.

### Lack of Due Process - Appeal Hearing - Defendant Brasile's Illegal Involvement

193.    In accordance with the Defendant Fire Department By-laws, including Article 9 Sections 4 (b) and (c) , an appeal of an administrative expulsion shall be made to the Board of Appeals and not directly to the fire chief and Defendant Brasile had a duty to immediately recuse himself from the appeal process.

194.    In accordance with the aforesaid by-laws, the Appeal Board shall be comprised of the Fire Department President, First Vice President and a member elected annually from all five (5) hose companies. A copy of Article 9 Sections 4 (b) and (c) of Defendant Fire Department By-Laws is attached hereto, marked Exhibit "H" and incorporated herein.

195.    As a result of the contradiction between Defendant Brasile's expulsion letter and the aforesaid by-laws, on June 5, 2020, Plaintiffs hand-delivered to Mr. McDowell a written appeal requesting a hearing before the Board of Appeals. A copy of the Plaintiffs' letter is attached hereto, marked Exhibit "I" and incorporated herein.

196.    At all times relevant to the within action, Defendant Fire Department had a duty to insure that its members, including Plaintiffs, were afforded proper due process and appeal rights pursuant to Defendant Fire Department's By-laws, including Article 9 Sections 4(b) and ©.

197.    Defendant Fire Department, by and through its elected, executive officers,

including Defendant McDowell, had the duty to insure that its members, including Plaintiffs, were afforded proper, formal notice of any appeal hearing.

198. Defendants Fire Department and McDowell had a further duty to notify the First Vice President and the elected representatives from all hose companies of Plaintiffs' appeals.

199. Defendants Fire Department and McDowell had a further duty to insure that the First Vice President and the elected representatives from all hose companies were present for and involved in the decision making process concerning Plaintiffs' appeals.

200. At all times relevant to the within action, Defendants Fire Department and McDowell intentionally and/or negligently breached their aforesaid duties to Plaintiffs.

## Civil Conspiracy - Defendants Brasile and McDowell

201. Subsequent to receiving the aforesaid letter on June 5, 2020, Defendants McDowell and Brasile entered into an understanding, agreement, plot and conspiracy to deprive Plaintiffs of their constitutional rights due to Plaintiffs engaging in the above-described protected First Amendment activity.

202. Pursuant to the aforesaid conspiracy, Defendants Brasile and McDowell failed to provide Plaintiffs with any proper, legal notice of the scheduling of an appeal hearing nor did they afford Plaintiffs a proper name-clearing hearing.

## Lack of Due Process - Defective Appeal Hearing Notices

203. Subsequent to June 5, 2020, Plaintiffs received sheets of paper which contained no letterhead, no date, no signature nor any identifying factors as to who created the sheets of paper.

-40-

204. The aforesaid unidentifiable sheets of paper further contained accusations which differed from those contained in Defendant Brasile's illegal expulsion letters.

205. Plaintiffs were never properly or legally notified of a date, time and location of any appeal hearing or that Plaintiffs' appeal would be heard by a Board of Appeals, as mandated by the applicable by-laws. Copies of defective appeal notices are attached hereto, marked Exhibit "J" and incorporated herein.

**Lack of Due Process - Defective Appeal Hearing**

206. Prior to June 25, 2020, Mr. Forish, in his capacity as Defendant Fire Department's First Vice President and as the elected representative of Hose Company No. 1 to the Board of Appeals, attempted to ascertain as to whether an appeal hearing had been scheduled on behalf of Plaintiffs.

207. Defendant McDowell never provided Mr. Forish with any information concerning an appeal before the Appeal Board.

208. Mr. Forish further spoke with Defendant Brasile in order to ascertain whether an appeal hearing had been scheduled for Plaintiffs.

209. Defendant Brasile threatened to have Mr. Forish arrested if he attempted to appear or participate in any appeal proceedings concerning Plaintiffs.

210. As Defendant Fire Department's First Vice President and as the elected representative of Hose Company No. 1, Mr. Forish had the absolute right and duty to participate in the appeal proceedings concerning Plaintiffs.

211. Prior to June 25, 2020, Steve Velky, a former Lieutenant, now Captain and representative of Hose Company No. 1, was a member of the Board of Appeals and had the

absolute right and duty to participate in the appeal proceedings involving the Plaintiffs.

212.     Prior to June 25, 2020, Defendant Brasile approached then Lieutenant Velky and gave him a direct order not to appear for or participate in the appeal proceedings involving Plaintiffs.

213.     Prior to June 25, 2020, Defendant Brasile, in violation of the City Code and all applicable by-laws, refused to recuse himself from the appeal proceedings involving Plaintiffs.

214.     According to the City Code, Defendant Fire Company's by-laws and the applicable hose company by-laws, the Plaintiffs were entitled to hearings before a properly comprised appeal board consisting of the designated executive officers and elected, representatives members of each of the five (5) hose companies.

215.     In accordance with the City Code, Defendant Fire Department by-laws and all applicable hose company by-laws, Mr. Forish and Mr. Velky had the absolute right and duty to participate in the appeal proceedings involving Plaintiffs.

216.     Defendant Brasile, acting in concert with Defendant McDowell and illegally utilizing the authority of his position, prevented Mr. Forish and Mr. Velky from attending and participating in the aforesaid appeal hearings and further denied Plaintiffs of their due process rights.

217.     Defendant Brasile, acting in concert with Defendant McDowell, in order to deny Plaintiffs a proper appeal hearing, refused to recuse himself from the appeal proceedings until he had improperly arranged the composition of the appeal board and illegally denied Mr. Forish, Mr. Velky and a representative of Hose Company No. 5 their legal right to participate in

Plaintiffs' appeal proceedings.

218.    On June 25, 2020, undersigned legal counsel, on behalf of Plaintiffs, forwarded a letters to Attorney Greiner and Attorney Houser, wherein, he advised as to the above-described procedural illegalities and requested intervention by both legal counsel. Copies of the undersigned's letters to Attorneys Greiner and Houser are attached hereto, marked Exhibit "K" and incorporated herein.

219.    Attorney Greiner never responded to the undersigned counsel.

220.    Attorney Houser responded by telephone and indicated that he would look into the matter, however, he never further responded to the undersigned counsel.

221.    In further violation of the City Code, Defendant Fire Department by-laws and all applicable hose company by-laws, no representative of Hose Company No. 5 participated in the appeal proceedings involving Plaintiffs.

222.    In accordance with the aforesaid conspiracy, on June 29, 2020, Defendant McDowell forwarded letters to Plaintiffs F. Giovannagelo, N. Giovannagelo and C. Giovannagelo stating that there had been an "appeal meeting" and that they were expelled from Defendant Fire Department. Copies of the aforesaid letters are attached hereto, marked Exhibit "L" and incorporated herein.

223.    On July 13, 2020, Defendant McDowell forwarded letters to Plaintiffs Blessing and Jones containing similar language about an "appeal meeting" and Plaintiffs expulsion as firefighters. Copies of aforesaid letters are attached hereto, marked Exhibit "M" and incorporated herein.

224.    On July 9, 2020 and July 14, 2020, Plaintiffs' legal counsel forwarded

letters to Mr. Gray, with copies to both solicitors, requesting that Defendant City immediately reverse the illegal expulsion of Plaintiffs. Copies of both letters are attached hereto, marked Exhibit "N" and incorporated herein.

225.     Neither Mr. Gray nor any policymaker/supervisory/management level employee of Defendant City responded to Plaintiffs' counsel's written correspondence.

## **Property Rights - Membership - Hose Company No. 1**

226.     Pursuant to the By-laws of Hose Company No. 1, all active firefighters who are members of Hose Company No. 1 are stakeholders and as such, enjoy pro-rata ownership of the assets of Hose Company No. 1.

227.     According to said By-laws, in order to qualify for stakeholder membership of the assets of Hose Company No. 1, an individual must maintain the status as a firefighter within said Company.

228.     At all times relevant to the within action, Plaintiffs, as Hose Company No. 1 firefighters, had ownership rights in the assets of Hose Company No. 1.

229.     At all times relevant to the within action, Hose Company No. 1 consisted of thirty-eight (38) firefighters, including Plaintiffs, thereby affording each member a 2.6 percent ownership interest in the Hose Company No. 1 assets.

230.     At all times relevant to the within action, the assets of Hose Company No. 1 included the real estate, structure and contents located at 300 Alexandria Street, Latrobe, Westmoreland County, Pennsylvania and the value of a liquor license issued by the Pennsylvania Liquor Control Board.

## Property Rights - Service As A Firefighter

231.    Pursuant to his service as a firefighter, Plaintiff Blessing earned a SAFER grant stipend in the amount of Five Hundred Fifty ($ 550.00) Dollars.

232.    Pursuant to his length of service as a firefighter, Plaintiff F. Giovannagelo earned a life membership which vested after twenty (20) years of service.

233.    Pursuant to their length of service and/or status as firefighters for Defendant Fire Department and their membership in Hose Company No. 1, each of the above-named Plaintiffs had accrued fundamental property rights in the form of:

       a)    Fire Department life insurance policy - value $ 25,000.00;

       b)    Hose Company No. 1 life insurance policy - value $ 10,000.00;

       c)    Company spousal death benefit - value $ 10,000.00; and

       d)    Company child death benefit - value $ 5,000.00 per child.

## False Statements - Creation and Dissemination of False and Defamatory Impression

234.    At all times relevant to the within action, a pipeline of information existed between Defendants, the hose companies, the residents of Defendant City and neighboring fire companies.

235.    At all times relevant to the within action, defamatory, false and damaging accusations by Defendants Wolford and Brasile were made publicly and disseminated through the pipeline.

236.    In November, 2019, Defendant Brasile falsely and publicly accused Plaintiff  N. Giovannagelo of falsifying his reported response numbers in order to falsely obtain a stipend payment which may be illegal.

237.     In November, 2019, Defendant Brasile falsely and publicly accused the Plaintiffs of being negligent and late in their response to fire calls.

238.     During the period from November, 2019 through March, 2020, on numerous occasions, Defendant Brasile falsely and publicly accused Plaintiffs of violating their responsibilities as firefighters and refusing to respond to fire calls.

239.     On numerous occasions during the period from November, 2019 through March, 2020, Defendant Brasile accused Plaintiffs of criminal conduct, including possession and use of marijuana and operating fire equipment and responding to fire calls while intoxicated and under the influence of controlled substances.

240.     On December 2, 2020, at a meeting before the assistant chiefs of the Latrobe Volunteer Fire Department, Defendant Brasile falsely accused Plaintiffs and other member of Hose Company No. 1 of refusing to clean and maintain fire apparatus and equipment and of failing to fix broken fire company equipment due to their laziness.

241.     Defendant Brasile further falsely accused Plaintiffs of responding to fire calls with dirty apparatus and broken equipment, thereby creating a risk to the structures and citizens of Defendant City.

242.     At the aforesaid meeting on December 2, 2019 and on numerous other occasions, Defendant Brasile falsely accused Plaintiff N. Giovannagelo of forging and falsifying his response statistics.

243.     At the aforesaid meeting and at numerous times thereafter, Defendant Brasile referred to Plaintiffs as "a bunch of no good f- - - ing a - - holes."

244.     During city council meetings in December, 2019 and January, 2020,

Defendant Wolford falsely accused Plaintiffs of falsifying call response numbers to be utilized by grant managers for the purpose of obtaining fire department grants.

245.     Defendant Wolford repeated these false accusations publicly during an interview with the Latrobe Bulletin newspaper.

246.     Defendant Wolford's false accusations that Plaintiffs had falsified response statistics were disseminated by Defendants Wolford and Brasile through the aforesaid pipeline.

247.     On numerous occasions including at city council meetings in December, 2019 and January, 2020 and February, 2020, each Plaintiff confronted Defendant Wolford about her defamatory, false and damaging accusations that Plaintiffs had falsified their call response numbers.

248.     On each occasion, Defendant Wolford indicated that she had been supplied with this information by her department head/Defendant Brasile, that she believed Defendant Brasile was being truthful and that Plaintiffs were lying.

249.     On numerous occasions, Defendant Wolford stated publicly that she did not believe any of Plaintiffs' above-described accusations against Defendant Brasile.

### Deprivation of Liberty Interest - Reputation

250.     At all times relevant to the within action, each individual Plaintiff maintained an excellent reputation as a firefighter among the citizens/residents of Defendant City.

251.     Defendants created and disseminated false and defamatory accusations against each of the above-named Plaintiffs, for which each Plaintiff demanded and was denied a

proper name clearing hearing.

252. Defendants further illegally expelled Plaintiffs from their positions as firefighters without benefit of a proper hearing and/or appeal.

253. As a result of being illegally expelled as firefighters from Hose Company No. 1, Plaintiffs were deprived of their ownership rights as members of Hose Company No. 1, including their interest in the real estate located at 300 Alexandria Street, Latrobe, Westmoreland County, Pennsylvania, the fire hall and its contents and the value of the fire hall liquor license.

254. Plaintiffs were further deprived of their above-described property rights and liberty interests in their reputations without due process of law.

### Custom and Deliberate Indifference

255. On April 7, 2017, Plaintiff C. Giovannagelo was employed by the Defendant City as a paid, duty driver for Defendant Fire Department.

256. Prior to said date, Plaintiff C. Giovannagelo had engaged in speech as a citizen on a matter of public concern involving Defendant Brasile's refusal to send the necessary fire fighting apparatus to structural fires, thereby creating great risk to the effected structures, residents and neighborhoods.

257. Plaintiff repeated his safety related concerns about Defendant Brasile's decisionmaking and lack of proper safety policies, when speaking at several fire department meetings, and with Westmoreland County emergency officials and 9-1-1 emergency dispatchers.

258. On April 7, 2017, Defendant Brasile publicly confronted Plaintiff for his speech, held his clenched fist in front of Plaintiff's face, verbally berated Plaintiff and threatened Plaintiff with physical harm.

259.     Plaintiff C. Giovannagelo reported the aforesaid incident and Defendant Brasile's assaultive behavior to Jack Murtha (hereinafter "Mr. Murtha"), a city councilman and member of the Fire Safety Committee and to Mr. Forish, a city councilman and member of the Fire Safety Committee.

260.     Mr. Murtha and Mr. Forish raised the issue of Defendant Brasile's assaultive behavior to members of city council, Defendant Wolford and other policymakers and supervisory/management level employees of Defendant City, however, Defendants took no remedial action.

261.     As a result of Plaintiff C. Giovannagelo engaging in citizen's speech on a matter of public concern, Defendant Brasile terminated Plaintiff's employment as a paid duty driver, stripped him of his rank of Lieutenant and suspended him from Defendant Fire Department.

262.     Plaintiff C. Giovannagelo reported Defendant Brasile's assaultive behavior to Defendant Wolford, other policymakers and to supervisory/management level employees of Defendant City.

263.     Despite Plaintiff C. Giovannagelo complaints, no corrective or remedial action was taken against Defendant Brasile by Defendant Wolford, by any policymaker or by any supervisory/management level employees of Defendant City.

### Assistant Chief John D. Gessler

264.     Defendant Brasile illegally expelled Assistant Chief Gessler as a direct retaliation for his protected citizen's speech on matters of public concern.

265.     Defendant Brasile's wrongful and illegal expulsion of Assistant Chief

Gessler violated the Defendant City Code, Defendant Fire Department By-laws, the By-laws of Hose Company No. 1 and Assistant Chief Gessler's right to due process as mandated by the aforesaid code, by-laws and the applicable federal and state law.

266. Defendant Brasile's wrongful and illegal expulsion of Assistant Chief Gessler was disseminated through the pipeline and made known to Defendants, policymakers/ supervisory/management level employees and residents of Defendant City.

267. Defendants took no action to reverse Defendant Brasile's wrongful expulsion of Assistant Chief Gessler, to reinstate him to his position and/or to discipline Defendant Brasile for his wrongful conduct.

## Official Policy

268. The City Code for Defendant City incorporates and adopts the By-laws of Defendant Fire Department.

269. According to Defendant Fire Department By-law Article 8, Section 3(b) "No member shall make any derogatory or disparaging remarks in any public forum or venue about the LVFD or its Companies, nor perform any action that is damaging to the credibility of the LVFD or its Companies. Doing so could result in disciplinary action(s) and/or expulsion."

270. Plaintiffs' above-described speech concerning Defendant Brasile's sexual harassment of a female firefighter involved matters of concern to Plaintiffs and all residents of Defendant City.

271. Plaintiffs' above-described speech, including but not limited to speech concerning the lack of fire safety policies, unsafe equipment, the unnecessary reduction of masked firefighters, the reduction of the number of firefighters available to respond to fire calls,

delayed responses to fire calls, the lack of functional fire hydrants and all speech relating to the inappropriate conduct of Defendant Brasile are clearly matters that concern Plaintiffs, their families and residents of Defendant City.

272.　　Plaintiffs' above-described speech with individual residents of Defendant City involved safety related concerns.

273.　　The above-quoted By-law requires Plaintiffs to forfeit their rights to speak as citizens on matters of public concern as conditions precedent to their serving as firefighters.

274.　　The above-described quoted by-law amounts to a formal, written policy which authorizes punishment in the form of suspension or expulsion for individuals who engage in protected First Amendment activity.

## COUNT I
## PLAINTIFFS VS. ALL DEFENDANTS
## FIRST AMENDMENT- FREEDOM OF SPEECH
## 42 U.S.C. 1983 - RETALIATION

275.　　Plaintiffs incorporate Paragraphs 1 through 274 above as though the same were more fully set forth at length herein.

276.　　Plaintiffs aver that Defendant Fire Department performs a governmental function and as such is a state actor.

277.　　Plaintiff further avers that Fire Protection is a public function which amounts to state action, even if the fire protection unit is comprised of voluntary or unpaid members.

278.　　Plaintiffs further aver that the opportunity to serve as a voluntary firefighter constitutes a governmental benefit or privilege entitled to First Amendment protection.

279.     Plaintiffs further aver that, as voluntary firefighters they may not constitutionally be compelled to relinquish their constitutional rights that they would otherwise enjoy as citizens to speak on matters of public interest or concern.

280.     Plaintiffs further aver that First Amendment protection applies in a volunteer context.

281.     Plaintiffs aver that Defendants Wolford, Brasile and McDowell were opposed and were angered by Plaintiffs' exercising their rights to freedom of speech as a citizens on matters of public concern.

282.     The aforesaid Defendants entered into a conspiracy and joined in and agreement, plan and/or plot to retaliate against Plaintiffs, damage Plaintiffs' reputation, terminate Plaintiffs as firefighters due to Plaintiffs exercising their rights to freedom of speech regarding matters of public concern.

283.     Defendants Wolford, Brasile and McDowell acting under color of state law, including but not limited to any color of any statute, ordinance, regulation, custom or usage and motivated by prejudice against Plaintiffs due to Plaintiffs' exercise of their First Amendment rights, including their right to freedom of speech as citizens on matters of public concern, engaged in conduct that deprived Plaintiffs of their rights, privileges and/or immunities as secured by the Constitution of the United States of America, the applicable statutes and case law therein.

284.     Plaintiffs aver that their exercising of their rights under the First Amendment, including their rights to free speech as citizens on matters of public concern, were substantial and motivating factors in the unlawful and retaliatory conduct of Defendants as more

fully set forth above.

285.     Defendant City has acquiesced to, adopted, condoned and participated in the above-described wrongful and discriminatory conduct of Defendants Fire Department, Wolford, Brasile and McDowell.

286.     At all times herein mentioned, Defendant City had an official policy or custom of engaging in retaliation against employees who exercised their First Amendment rights, including their rights to freedom of speech as citizens on matters of public concern.

287.     Defendant City was recklessly indifferent to its policymakers/ decisionmakers, supervisory/management level employees who engage in retaliation against employees/individuals who exercise their First Amendment rights including their rights to freedom of speech as citizens on matters of public concern.

288.     Plaintiffs' speech was not pursuant to their duties and responsibilities with Defendant Fire Department or Hose Company No. 1 and constituted citizens' speech.

289.     Each disciplinary action imparted by Defendants was contemporaneous to Plaintiffs' above-described citizens' speech on matters of public concern.

290.     Defendants' custom and policy of retaliating against employees/individuals who exercise their First Amendment rights was a direct and proximate cause of the deprivation of Plaintiffs' rights and their resulting injuries and damages.

291.     As a result of the aforesaid actions of Defendants, Plaintiff s have sustained and will continue to sustain damages, including mental anguish, emotional distress, embarrassment, humiliation, outrage, damage to their reputations, loss of present and future opportunities as firefighters and loss of property and benefits accrued by their membership as

firefighters in Hose Company No. 1.

WHEREFORE, Plaintiffs Christopher Blessing, Cody Giovannagelo, Fabian Giovannagelo, Nico Giovannagelo and Ryan Jones respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally and determine that Plaintiffs have suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of their civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiffs the following relief:

A.    A declaration that Defendants have violated Plaintiffs' civil rights;

B.    Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.    Punitive damages, as appropriate, against the individually named Defendants in their individual capacities;

D.    Exemplary damages, as applicable;

E.    Injunctive relief, including entering an Order enjoining Defendants and all supervisory and management level employees of the Defendant City from engaging in further violations of the right to freedom of speech and procedural due process and directing that they undertake a remedial program, provide regular and periodic training to their policymakers/decisionmakers and supervisory/management level employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

F.    Injunctive relief, including entering an Order vacating the illegal election for Fire Chief in December, 2019, wherein Defendant Brasile illegally suspended and removed his opponent, Plaintiff N. Giovannagelo from the ballot and vacating the Defendant City's acceptance of the election results and installing Defendant Brasile as Fire Chief;

G.    Injunctive relief, including entering an Order reinstating the election results concerning the vote for Fire Chief taken on March 5, 2020, resulting in Plaintiff N. Giovannagelo defeating Defendant Brasile by a vote of 32-17;

H.    Injunctive relief, including entering an Order reinstating the results of a special election on March 8, 2020, conducted by Hose Company No. 1 wherein by a vote of 22-0, the membership voted to expel Defendant Brasile as a member of Hose Company No. 1, thereby eliminating his eligibility to serve as Fire Chief for a minimum period of one (1) year;

I.    Injunctive relief, including entering an Order immediately reinstating each Plaintiff to his position as a firefighter for Hose Company No. 1, and restoring each Plaintiff's property rights and all benefits relating thereto;

J.    Attorney's fees, costs of suit and pre-judgment interest; and

K.    Such other equitable relief as this Honorable Court should deem just and proper.

## COUNT II
## PLAINTIFFS VS. ALL DEFENDANTS
## FOURTEENTH AMENDMENT- DUE PROCESS
## 42 U.S.C.§ 1983

292.    Plaintiffs incorporate Paragraphs 1 through 291 above as though the same were more fully set forth at length herein.

293.    Defendants Wolford, Brasile and McDowell acting under color of state law, including but not limited to any color of any statute, ordinance, regulation, custom or usage and motivated by prejudice against Plaintiffs due to Plaintiffs' exercise of their First Amendment rights, including their right to freedom of speech as citizens on matters of public concern, engaged in conduct that deprived Plaintiffs of their rights, privileges and/or immunities as secured by the Constitution of the United States of America, the applicable statutes and case law therein.

294.    Plaintiffs had property rights in the assets of Hose Company No. 1 which included the real estate, structure and contents of the property located at 300 Alexandria Street, Latrobe, Westmoreland County, Pennsylvania.

295.     Plaintiff Blessing had a property interest in the payment of a SAFER grant stipend in the amount of Five Hundred Fifty ($550.00) Dollars, which he earned in the 2020 calendar year.

296.     Plaintiffs had property rights which accrued pursuant to a length of service awards program with Defendant City.

297.     Pursuant to his thirty-seven (37) years as a firefighter, Plaintiff F. Giovannagelo was entitled to a life membership/length of service death benefit in the amount of Twenty-Five Thousand ($25,000.00) Dollars which vested after twenty (20) years of service.

298.     Pursuant to their service as firefighters for Defendant City, Defendant Fire Department and Hose Company No. 1, each Plaintiff had a vested property interest and were entitled to life insurance policies, spousal death benefit policies and child death benefit policies.

299.     Defendants, as a direct retaliation for Plaintiffs' protected activity, expelled Plaintiffs as firefighters and wrongfully, illegally and in violation of Plaintiffs' civil rights stripped and deprived Plaintiffs of their above-described property rights, including refusing to pay Plaintiff Blessing his earned SAFER stipend.

300.     Plaintiffs had the liberty and right to perform a valuable governmental function by serving as firefighters for Defendant City free from unreasonable governmental interference.

301.     During the period from October, 2019 through June, 2020, Defendants Brasile and Wolford made defamatory, false and damaging accusations against Plaintiffs which were disseminated publicly through the media, workplace and the pipeline of information existing within Defendant City.

302.     The Defendants' defamatory, false and damaging statements created a false and defamatory impression concerning Plaintiffs and Defendants utilized the aforesaid information pipeline to disseminate the aforesaid defamatory impression throughout Defendant City, Westmoreland County and the surrounding counties.

303.     The actions of the Defendants were damaging to the reputations of the Plaintiffs.

304.     Defendants intentionally refused to afford Plaintiffs an opportunity to respond to the false, baseless and outrageous information publicly disseminated by Defendants and to the denial of proper notice, illegal and unauthorized expulsion and surreptitious denial of Plaintiffs' appeal rights.

305.     Defendants deprived Plaintiffs of their rights by subjecting Plaintiffs to false, outrageous, defamatory, damaging accusations and by depriving Plaintiffs of a proper hearing and/or opportunity to be heard to clear their names prior to being expelled as firefighters.

306.     Plaintiff had liberty interests in their good names and reputations and their right to serve as firefighters in other surrounding cities, boroughs or municipalities without interference by Defendants.

307.     The attacks on Plaintiffs' reputations and good names, will damage Plaintiffs attempts to serve as firefighters elsewhere.

308.     Plaintiffs cannot be deprived of their liberty interests without due process of law and must be afforded a fair and impartial hearing.

309.     Defendants' wrongful conduct created and disseminated a false and defamatory impression which was stigmatizing to each Plaintiff, his good name and reputation.

310.     Plaintiffs, as members of Defendant Fire Department, had the right to due process, as mandated by Defendant Fire Department By-laws.

311.     Defendant Fire Department had the duty to provide Plaintiffs with proper notice of an appeal hearing and to insure that Plaintiffs' appeals be heard by the Appeal Board in accordance with Defendant Fire Department's By-laws.

312.     Defendant Fire Department had a further duty to insure that, as mandated by its by-laws, the Plaintiffs would be afforded a proper appeal hearing wherein they could respond to Defendant's false, stigmatizing and professionally damaging accusations and clear their names.

313.     Defendant Fire Department had a further duty to supervise and control the actions of Defendant McDowell and to protect Plaintiffs from the conspiratorial action of Defendants McDowell and Brasile.

314.     At all times relevant to the within action Defendant Fire Department breached its duties to its members, including Plaintiffs.

315.     Each Plaintiff had a right to a name clearing hearing to address the false, stigmatizing and professionally damaging information being disseminated by Defendants.

316.     Defendants repeatedly denied Plaintiffs' requests for a name-clearing hearing prior to and subsequent to their expulsion of Plaintiffs from Defendant Fire Department.

317.     Defendants' wrongful conduct, in addition to infringing upon and damaging Plaintiffs' reputations, has deprived Plaintiffs of their above-described First Amendment rights, Fourteenth Amendment property rights and ability to serve as firefighters within Defendant City and elsewhere.

318.     Plaintiffs cannot be deprived of their liberty or property interests, including those set forth above without due process of law.

319.     The actions of the Defendants violated the Plaintiffs' liberty and property interests as guaranteed by the Fourteenth Amendment of the United States Constitution.

320.     Defendant City has acquiesced to, adopted, condones and participated in the above-described wrongful and discriminatory conduct of Defendants Fire Department, Wolford, Brasile and McDowell.

WHEREFORE, Plaintiffs Christopher Blessing, Cody Giovannagelo, Fabian Giovannagelo, Nico Giovannagelo and Ryan Jones respectfully request that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally and determine that Plaintiffs have suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of their civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiffs the following relief:

A.     A declaration that Defendants have violated Plaintiffs' civil rights;

B.     Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.     Punitive damages, as appropriate, against the individually named Defendants in their individual capacities;

D.     Exemplary damages, as applicable;

E.     Injunctive relief, including entering an Order enjoining Defendants and all supervisory and management level employees of the Defendant City from engaging in further violations of the right to freedom of speech and procedural due process and directing that they undertake a remedial program, provide regular and periodic training to their policymakers/decisionmakers and supervisory/management level employees concerning the mandates of the First and Fourteenth

Amendments to the United States Constitution;

F.      Injunctive relief, including entering an Order vacating the illegal election for Fire Chief in December, 2019, wherein Defendant Brasile illegally suspended and removed his opponent, Plaintiff N. Giovannagelo from the ballot and vacating the Defendant City's acceptance of the election results and installing Defendant Brasile as Fire Chief;

G.      Injunctive relief, including entering an Order reinstating the election results concerning the vote for Fire Chief taken on March 5, 2020, resulting in Plaintiff N. Giovannagelo defeating Defendant Brasile by a vote of 32-17;

H.      Injunctive relief, including entering an Order reinstating the results of a special election on March 8, 2020, conducted by Hose Company No. 1 wherein by a vote of 22-0, the membership voted to expel Defendant Brasile as a member of Hose Company No. 1, thereby eliminating his eligibility to serve as Fire Chief for a minimum period of one (1) year;

I.      Injunctive relief, including entering an Order immediately reinstating each Plaintiff to his position as a firefighter for Hose Company No. 1, and restoring each Plaintiff's property rights and all benefits relating thereto;

J.      Attorney's fees, costs of suit and pre-judgment interest; and

K.      Such other equitable relief as this Honorable Court should deem just and proper.

## COUNT III
## PLAINTIFFS VS. DEFENDANT CITY OF LATROBE
## 42 U.S.C. § 1983 - MUNICIPAL/*MONELL* LIABILITY

321.    Plaintiffs incorporate Paragraphs 1 through 320 above as though the same were more fully set forth at length herein.

322.    A single action may represent an act of "official government policy" if the acting official is an authorized decisionmaker.

323.    Defendant City, by and through its City Code has adopted the by-laws of Defendant Fire Department, including Article 8, Section 3(b), and as such, has maintained a

formal, written policy which specifically provides for suspension or expulsion for individuals/ employees who speak as citizens on matters of public concern.

324.    In those instances wherein a local government and its high-ranking officials/decisionmakers have not set out a formal written policy, Plaintiff may set forth facts that reveal a governmental custom and/or policy or a "de facto" official policy on behalf of Defendant City.

325.    Plaintiffs may prove that Defendant City, by and through its policymakers, decisionmakers and supervisory/management level employees, acted pursuant to a custom to retaliate against Plaintiffs for the First Amendment activity even if said custom did not receive formal approval through the decisionmaking channels of the Defendant City.

326.    At all times relevant to the within action, Defendants have developed and maintained official policies and customs of retaliating against individuals who engage in constitutionally protected activity and who exercise their First Amendment right to free speech.

327.    Defendants' aforesaid official policies and customs of violating individual's rights resulted in the violation of Plaintiffs' Fourteenth Amendment right to due process, an illegal stripping of their property rights, a violation of Plaintiffs' liberty interest in their names and reputations and violations of Plaintiffs' ability to perform governmental function as firefighters in the surrounding municipalities, boroughs and counties.

328.    Defendant City, by and through its supervisory/management level employees, has acted pursuant to said policy and custom and engaged in the constitutional deprivations more fully described above.

329. Defendant City developed or maintained policies or customs exhibiting deliberate indifference to the constitutional rights of individuals, including individuals' rights to speak as a citizen on matters of public concern and to due process rights protected by the Fourteenth Amendment.

330. Defendant City developed or maintained policies or customs exhibiting deliberate indifference to unjust, unlawful and retaliatory practices by its supervisory/management level employees, wherein individuals, such as Plaintiffs, were retaliated against for exercising their First Amendment rights to citizen's speech on maters of public concern and deprived of their Fourteenth Amendment right to due process.

331. Defendant City failed or refused to mandate the appropriate in-service training or discipline for its supervisory or management level agents or employees who were responsible for protecting the civil and constitutional rights of individuals.

332. Defendant City has maintained inadequate and defective policies, customs and practices in the hiring of its policymakers, decisionmakers and supervisory/ management level employees, including all department heads as defined in the Latrobe City Code.

333. Defendant City has maintained inadequate and defective policies, customs and practices of training its supervisory/management level employees concerning the constitutionally protected rights of individuals, including Plaintiffs.

334. Defendant City failed to adopt policies which were necessary to avoid or prohibit misconduct, civil and constitutional rights violations as set forth herein.

335. As a result of the defective and inadequate policies and customs described

above and the failure to conduct proper screening, interviewing, training, re-training and failure to adopt the necessary and appropriate disciplinary policies, Defendant policymakers, decisionmakers and supervisory/management level employees, including Defendants Wolford, Brasile and McDowell, believed that their actions would not be properly monitored and that their acts of misconduct would not be investigated or sanctioned, but rather would be tolerated.

336. As a result of the existing policies, customs and deliberate indifference of Defendant City and the wrongful and unconstitutional conduct of its policymakers, decision-makers and supervisory/management level employees, individuals such as Plaintiffs have been subject to civil and constitutional rights violations.

337. Defendant City has adopted, participated in, condoned and acquiesced to the above-described wrongful and unconstitutional conduct of its policymakers, decisionmakers and supervisory/management level employees and including Defendants Wolford, Brasile and McDowell.

338. Defendant City has adopted, participated in, condoned and acquiesced to the above-described wrongful, negligent and unconstitutional conduct of Defendant Fire Department in depriving Plaintiffs of their due process and appeal rights.

339. The Defendant City's adopting and maintaining the above-described defective and inadequate policies and customs and its failure to enact the necessary policies demonstrated a conscious and deliberate indifference and disregard for the well-being and constitutional rights of Plaintiffs.

WHEREFORE, Plaintiffs Christopher Blessing, Cody Giovannagelo, Fabian

Giovannagelo, Nico Giovannagelo and Ryan Jones respectfully request that this Honorable Court enter judgment in their favor and against Defendant City and determine that Plaintiffs have suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of their civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiffs the following relief:

A. A declaration that Defendants have violated Plaintiffs' civil rights;

B. Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C. Punitive damages, as appropriate, against the individually named Defendants in their individual capacities;

D. Exemplary damages, as applicable;

E. Injunctive relief, including entering an Order enjoining Defendants and all supervisory and management level employees of the Defendant City from engaging in further violations of the right to freedom of speech and procedural due process and directing that they undertake a remedial program, provide regular and periodic training to their policymakers/ decisionmakers and supervisory/management level employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

F. Injunctive relief, including entering an Order vacating the illegal election for Fire Chief in December, 2019, wherein Defendant Brasile illegally suspended and removed his opponent, Plaintiff N. Giovannagelo from the ballot and vacating the Defendant City's acceptance of the election results and installing Defendant Brasile as Fire Chief;

G. Injunctive relief, including entering an Order reinstating the election results concerning the vote for Fire Chief taken on March 5, 2020, resulting in Plaintiff N. Giovannagelo defeating Defendant Brasile by a vote of 32-17;

H. Injunctive relief, including entering an Order reinstating the results of a special election on March 8, 2020, conducted by Hose Company No. 1 wherein by a vote of 22-0, the membership voted to expel Defendant Brasile as a member of Hose Company No. 1, thereby eliminating his

eligibility to serve as Fire Chief for a minimum period of one (1) year;

I.      Injunctive relief, including entering an Order immediately reinstating each Plaintiff to his position as a firefighter for Hose Company No. 1, and restoring each Plaintiff's property rights and all benefits relating thereto;

J.      Attorney's fees, costs of suit and pre-judgment interest; and

K.      Such other equitable relief as this Honorable Court should deem just and proper.

**COUNT IV**
**PLAINTIFFS VS. DEFENDANTS  CITY OF LATROBE,**
**BRASILE AND McDOWELL**
**42 U.S.C. § 1983 - CONSPIRACY**

340.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 339 as though the same were more fully set forth at length herein.

341.    Defendants Brasile and McDowell acting individually or in combination with each other under color of state law, including but not limited to color of any statute, ordinance, regulation, custom or usage and motivated by prejudice against Plaintiff, conspired with each other for the purpose of impeding, obstructing, hindering and defeating the due course of justice and with the intent to deny and deprive Plaintiffs of their well established First and Fourteenth Amendment rights to freedom of speech and right to due process, retaliated against Plaintiffs for exercising said rights and Defendant City condoned, acquiesced to, adopted and participated in the unlawful conduct of Defendants Brasile and McDowell.

342.    Defendants Brasile and McDowell acting in combination with each other, entered an agreement or understanding among all or between any of the Defendants to plot, plan or conspire to carry out the alleged chain of events and overt acts, as set forth above, thereby causing Plaintiffs to suffer and sustain deprivations, injuries and special damages as more fully set

forth herein.

343.     Defendants Brasile and McDowell improperly and unlawfully acted to impart unwarranted and unwelcome discipline to Plaintiffs in retaliation for Plaintiffs' for exercising their well established First Amendment rights of freedom of speech as citizens on matters of public concern.

344.     The original agreement, understanding, plot, plan and conspiracy to retaliate against Plaintiffs for their exercising of their protected First Amendment rights was entered into subsequent to June 5, 2019, at which time Defendant McDowell received, by hand-delivery, Plaintiffs' demands for appeals to be heard before Defendant Fire Department's Board of Appeals.

345.     Subsequent to June 5, 2020, Defendants Brasile and McDowell took overt acts in furtherance of the aforesaid conspiracy by depriving Plaintiffs of proper notice and a hearing before the Appeal Board, as mandated by Defendant Fire Department's By-laws.

346.     An overt act in furtherance of the above conspiracy was taken by Defendants Brasile and McDowell by their collaborating on and sending Plaintiffs "unidentifiable sheets of paper" purporting to set a hearing date and containing accusations which differed from or were not contained in Defendant Brasile's expulsion letters.

347.     Pursuant to the aforesaid conspiracy, Defendants Brasile and McDowell intentionally omitted any identifiable factors from the aforesaid "sheets of paper", thereby precluding Plaintiffs' ability to formally challenge the false and ridiculous accusations contained therein.

348.     An overt act in furtherance of the above conspiracy was taken by Defendant

Brasile who threatened to have Mr. Forish arrested if he attempted to participate in Plaintiffs' appeal process.

349.     An overt act in furtherance of the above conspiracy was taken by Defendant McDowell, who improperly refused to notify Mr. Forish, the Defendant Fire Department's First Vice President and the representatives elected by the hose companies of Plaintiffs' demands for appeals and the opportunity to clear their names, all of which was in direct violation of the Defendant Fire Department's By-laws.

350.     An overt act in furtherance of the above conspiracy was taken by Defendants Brasile and McDowell, who, without proper notice or due process, presided over "an appeal meeting", in violation of Defendant Fire Department's By-laws.

351.     An overt act in furtherance of the above conspiracy was taken by Defendant McDowell on June 29, 2020, at which time he forwarded letters to Plaintiff s F. Giovannagelo, C. Giovannagelo and N. Giovannagelo, advising each individual that he had been expelled by Defendant Fire Department.

352.     An overt act in furtherance of the above conspiracy was taken by Defendant McDowell on July 11, 2020, at which time he forwarded letters to Plaintiffs Blessing and Jones, advising each Plaintiff that he had been expelled from the Defendant Fire Department.

353.     The letters forwarded to Plaintiffs by Defendant McDowell (Exhibits "L" and "M") refer to "appeal meeting" dates which were identical to the dates set forth in the unidentifiable sheets of paper.

354.     At all times relevant to the within action, Defendant City has acquiesced to, condoned, adopted and participated in the unlawful conduct of Defendants Brasile and McDowell

and its elected officials, policymakers, decisionmakers and supervisory/ management level personnel.

WHEREFORE, Plaintiffs Christopher Blessing, Cody Giovannagelo, Fabian Giovannagelo, Nico Giovannagelo and Ryan Jones respectfully request that this Honorable Court enter judgment in their favor and against Defendants City, Brasile and McDowell, jointly and severally and determine that Plaintiffs have suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of their civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiffs the following relief:

A.  A declaration that Defendants have violated Plaintiffs' civil rights;

B.  Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.  Punitive damages, as appropriate, against the individually named Defendants in their individual capacities;

D.  Exemplary damages, as applicable;

E.  Injunctive relief, including entering an Order enjoining Defendants and all supervisory and management level employees of the Defendant City from engaging in further violations of the right to freedom of speech and procedural due process and directing that they undertake a remedial program, provide regular and periodic training to their policymakers/ decisionmakers and supervisory/management level employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

F.  Injunctive relief, including entering an Order vacating the illegal election for Fire Chief in December, 2019, wherein Defendant Brasile illegally suspended and removed his opponent, Plaintiff N. Giovannagelo from the ballot and vacating the Defendant City's acceptance of the election results and installing Defendant Brasile as Fire Chief;

G.      Injunctive relief, including entering an Order reinstating the election results concerning the vote for Fire Chief taken on March 5, 2020, resulting in Plaintiff N. Giovannagelo defeating Defendant Brasile by a vote of 32-17;

H.      Injunctive relief, including entering an Order reinstating the results of a special election on March 8, 2020, conducted by Hose Company No. 1 wherein by a vote of 22-0, the membership voted to expel Defendant Brasile as a member of Hose Company No. 1, thereby eliminating his eligibility to serve as Fire Chief for a minimum period of one (1) year;

I.      Injunctive relief, including entering an Order immediately reinstating each Plaintiff to his position as a firefighter for Hose Company No. 1, and restoring each Plaintiff's property rights and all benefits relating thereto;

J.      Attorney's fees, costs of suit and pre-judgment interest; and

K.      Such other equitable relief as this Honorable Court should deem just and proper.

**COUNT V**
**PLAINTIFFS V. DEFENDANT WOLFORD**
**42 U.S.C. § 1983 - SUPERVISORY LIABILITY**

355.    Plaintiffs hereby incorporate by reference the allegations in Paragraphs 1 through 354 as though the same were more fully set forth at length herein.

356.    Defendant Wolford, her policymakers and supervisors, acted in a supervisory or management capacity under circumstances and during the period when their subordinate, Defendant Brasile violated the rights of Plaintiffs.

357.    At all times, the actions of Defendant Brasile were accepted, approved, condoned and acquiesced to by the Defendant Wolford, who acted in a management or supervisory capacity and all Defendants acted under color of state law.

358.    Defendant Wolford and Defendant City's decisionmakers and the supervisory/management level employees of the police department directed the conduct which resulted in the violation of the federal rights of the Plaintiffs as alleged or had actual knowledge of

the violation of said federal rights by the subordinate defendants and accepted, approved, condoned and acquiesced in said violations.

359.    Defendant Wolford and her supervisors acted with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation of the civil rights of Plaintiffs or failed to maintain or enforce a policy under circumstances wherein one or more policies or regulations were necessary to protect the rights of Plaintiffs and other citizens.

360.    Defendants Wolford had specific knowledge of the  unconstitutional conduct of Defendant Brasile and intentionally acquiesced in this conduct by failing to establish proper procedures or by failing to adequately train and supervise Defendant Brasile and other supervisory/management employees.

361.    The conduct of Defendant Wolford was a proximate cause of the injuries and damages suffered by Plaintiffs, as set forth herein and Defendant Wolford's failure to train or supervise Defendant Brasile caused Plaintiffs to be deprived of their civil rights and as such, said supervisory Defendant is personally liable for all damages and injuries to Plaintiffs.

362.    The illegal and improper actions of Defendant Brasile were a direct result of his lack of proper training and supervision by Defendant Wolford, her policymakers and supervisory/management level employees.

363.    As a further result of the aforesaid deficient supervision of Defendant Brasile by Defendant Wolford, her policymakers and supervisory/management level employees, Plaintiffs suffered the damages set forth herein.

WHEREFORE, Plaintiffs Christopher Blessing, Cody Giovannagelo, Fabian Giovannagelo, Nico Giovannagelo and Ryan Jones respectfully request that this Honorable

Court enter judgment in their favor and against Defendant Wolford and determine that Plaintiffs

have suffered the substantial and continuing injuries set forth above and that said injuries resulted

from the deprivation of their civil and constitutional rights, discrimination and other wrongful

conduct by Defendants and award Plaintiffs the following relief:

A. A declaration that Defendants have violated Plaintiffs' civil rights;

B. Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C. Punitive damages, as appropriate, against the individually named Defendants in their individual capacities;

D. Exemplary damages, as applicable;

E. Injunctive relief, including entering an Order enjoining Defendants and all supervisory and management level employees of the Defendant City from engaging in further violations of the right to freedom of speech and procedural due process and directing that they undertake a remedial program, provide regular and periodic training to their policymakers/decisionmakers and supervisory/management level employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

F. Injunctive relief, including entering an Order vacating the illegal election for Fire Chief in December, 2019, wherein Defendant Brasile illegally suspended and removed his opponent, Plaintiff N. Giovannagelo from the ballot and vacating the Defendant City's acceptance of the election results and installing Defendant Brasile as Fire Chief;

G. Injunctive relief, including entering an Order reinstating the election results concerning the vote for Fire Chief taken on March 5, 2020, resulting in Plaintiff N. Giovannagelo defeating Defendant Brasile by a vote of 32-17;

H. Injunctive relief, including entering an Order reinstating the results of a special election on March 8, 2020, conducted by Hose Company No. 1 wherein by a vote of 22-0, the membership voted to expel Defendant Brasile as a member of Hose Company No. 1, thereby eliminating his eligibility to serve as Fire Chief for a minimum period of one (1) year;

I. Injunctive relief, including entering an Order immediately reinstating

each Plaintiff to his position as a firefighter for Hose Company No. 1, and restoring each Plaintiff's property rights and all benefits relating thereto;

J.      Attorney's fees, costs of suit and pre-judgment interest; and

K.      Such other equitable relief as this Honorable Court should deem just and proper.

## DEMAND FOR JURY TRIAL

364.    Plaintiffs hereby demands a jury trial on all issues of facts and damages in this action.

Respectfully submitted,

*/s/Fredrick E. Charles*
Fredrick E. Charles, Esquire
Attorney I.D. Number 25691
Attorney for Plaintiffs
441 Linden Street
Allentown, PA 18102
(610) 437-7064

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER BLESSING,** | : | |
| **CODY GIOVANNAGELO, FABIAN** | : | **NO. 2:20-cv-1212-DSC** |
| **GIOVANNAGELO, NICO** | : | |
| **GIOVANNAGELO and RYAN JONES,** | : | |
| **PLAINTIFFS** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF LATROBE, ROSEMARIE M.** | : | |
| **WOLFORD, MAYOR, LATROBE** | : | |
| **VOLUNTEER FIRE DEPARTMENT,** | : | |
| **JOHN BRASILE, FIRE CHIEF and** | : | |
| **CHUCK McDOWELL, JR., FIRE** | : | |
| **DEPARTMENT PRESIDENT,** | : | |
| **DEFENDANTS** | : | |

## CERTIFICATE OF SERVICE

Fredrick E. Charles, Esquire, hereby certifies that on the 25th day of January,

2021, he served the Amended Complaint via electronic mail upon the following:

Scott G. Dunlop, Esquire
Morgan M. J. Randle, Esquire
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA 15219
*sgdunlop@mdwcg.com*
*mmrandle@mdwcg.com*

Bruce E. Rende, Esquire
ROBB LEONARD MULVHILL,LLP
500 Grant Street, Suite 2300
Pittsburgh, PA 15219
*brende@rlmlawfirm.com*

Dated: January 25, 2021                    By:

                                                                */s/Fredrick E. Charles*
                                                                Fredrick E. Charles, Esquire
                                                                Attorney for Plaintiff
                                                                Attorney I. D. No.: 25691
                                                                441 Linden Street
                                                                Allentown, PA 18102
                                                                (610) 437-7064