IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER BLESSING,                    )
CODY GIOVANNAGELO,                       )
FABIAN GIOVANNAGELO,                     )
NICO GIOVANNAGELO and                    )
RYAN JONES,                              )
                                         )
            Plaintiffs,                  )
                                         )
      v.                                 )      Civil Action No. 20-1212
                                         )
CITY OF LATROBE, ROSEMARIE M.            )
WOLFORD, *Mayor*, LATROBE                )
VOLUNTEER FIRE DEPARTMENT,               )
JOHN BRASILE, *Fire Chief*, and          )
CHUCK McDOWELL, *Fire                     )
Department President*,                   )
                                         )
            Defendants.                  )

**MEMORANDUM OPINION**

The above-captioned matter involves civil rights claims brought pursuant to 42 U.S.C.

§ 1983 by a group of former volunteer firefighters against the City of Latrobe, the Mayor of

Latrobe, the Latrobe Volunteer Fire Department, the Fire Chief, and the Fire Department's

President.  Presently before the Court are the motions to dismiss Plaintiffs' Amended Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and briefs in support thereof,

filed by the City of Latrobe and its Mayor (collectively, the "City Defendants") (Docket Nos. 23,

24) and by the Latrobe Volunteer Fire Department, its Fire Chief, and its President (collectively,

the "Fire Department Defendants") (Docket Nos. 21, 22), the materials in opposition thereto filed

by Plaintiffs (Docket Nos. 25, 26, 27), the replies filed by Defendants (Docket Nos. 28, 29), and

the sur-reply filed by Plaintiffs (Docket No. 33).  For the reasons set forth herein, the Fire

Department Defendants' motion is denied, and the City Defendants' motion is granted in part and denied in part.

I.    **Background**

As alleged in the Amended Complaint,[1] Plaintiffs Christopher Blessing, Cody Giovannagelo, Fabian Giovannagelo, Nico Giovannagelo, and Ryan Jones ("Plaintiffs") all previously served as volunteer firefighters for Defendant Latrobe Volunteer Fire Department ("the Fire Department"). (Docket No. 17, ¶¶ 4-8, 14). Plaintiffs aver that they were wrongfully and illegally expelled from their positions with the Fire Department by its Fire Chief, Defendant John Brasile ("Brasile"), who acted in concert with the Fire Department's President, Chuck McDowell, Jr. ("McDowell"), in retaliation for Plaintiffs' engagement in speech as citizens on matters of public concern. (*Id.* ¶¶ 17, 22). As further alleged, Defendant Rosemarie M. Wolford, Mayor of the City of Latrobe ("Mayor Wolford"), thwarted Plaintiffs' attempts to remove Brasile from his position as Fire Chief, and the City of Latrobe (the "City") confirmed, adopted and ratified the actions of Mayor Wolford and others who were its supervisory or management level employees or agents. (*Id.* ¶¶ 9, 10).

More specifically, Plaintiffs allege that on November 7, 2019, Plaintiff Nico Giovannagelo was nominated to run for the position of Fire Chief in opposition to Brasile, in an election scheduled to be held on December 5, 2019. (Docket No. 17, ¶ 34). Plaintiffs allege that on December 2, 2019, Brasile ordered the shutdown of the station where Plaintiffs served, Hose Company No. 1. (*Id.* ¶ 48). Plaintiffs also allege that a number of firefighters were suspended by

---

[1]    Because the Amended Complaint is a 72-page document containing 364 paragraphs, only a brief summary of that pleading is provided here. (Docket No. 17).

Brasile, although it is unclear from the Amended Complaint which individuals were suspended and when their suspensions occurred.[2]  (*Id.* ¶¶ 51, 57, 62).

Plaintiffs further allege that for the December 2019 election, "Brasile removed his opponent from the ballot and declared himself the fire chief by acclamation."[3]  (Docket No. 17, ¶¶ 104, 131).  For a period of some months around that time, Plaintiffs allege that they participated in a number of meetings involving the Fire Department and/or the City's Council, and that before, during, and after such meetings, they voiced certain concerns to Fire Department and City Council members and members of the public.  (*Id.* ¶¶ 52-53, 75-79, 95-102, 106-08, 115, 119, 123). Plaintiffs allege that they spoke about the December 2019 suspension of seven firefighters, Brasile's December 2019 re-election, allegations regarding Brasile's conduct as Fire Chief, and fire safety issues at the Fire Department.  (*Id.*).  During that time, Plaintiffs also allegedly attended Fire Department meetings in which members voted to investigate Brasile, to remove Brasile as Fire Chief, and to replace Brasile with Nico Giovannagelo.  (*Id.* ¶¶ 103, 132).  Plaintiffs allege that another election was held on March 5, 2020, in which Nico Giovannagelo and Brasile were the candidates for Fire Chief, and of which Nico Giovannagelo was the winner.  (*Id.* ¶¶ 130, 132).  As further alleged, Mayor Wolford and other supervisory/management level agents/employees of the City refused to intervene in the parties' dispute when Plaintiffs sought their help in dealing with complaints about Brasile.  (*Id.* ¶¶ 78-80, 106-09).  Plaintiffs also allege that after the second

---

[2]     For example, the Amended Complaint refers to conversations held on December 2, 2019 and December 3, 2019, in which a topic of discussion was seven "masked firefighters" having been previously suspended by Brasile. (Docket No. 17, ¶¶ 51, 57).  However, the Amended Complaint also alleges that Brasile suspended seven masked firefighters on December 5, 2019, including Plaintiffs Nico Giovannagelo and Cody Giovannagelo.  (*Id.* ¶ 62).

[3]     Defendants argue, on the other hand, that Nico Giovannagelo was never successfully nominated for the position of Fire Chief, citing to meeting minutes from said meeting (attached to their brief) during which the nomination process allegedly occurred.  (Docket Nos. 22 at 11; 22-1 at 1).

election was held, Mayor Wolford wrongfully intervened in the election process and improperly failed to recognize Nico Giovannagelo as Fire Chief.  (*Id.* ¶¶ 136-38).

On August 14, 2020, Plaintiffs filed their Complaint in this matter, and on January 11, 2021, Defendants filed their first motions to dismiss.  (Docket Nos. 1, 12, 13, 14, 15).  On January 25, 2021, Plaintiffs filed their Amended Complaint, which includes five Counts: (I) retaliation in violation of Plaintiffs' First Amendment freedom of speech rights pursuant to 42 U.S.C. § 1983 (Plaintiffs v. all Defendants); (II) violation of Plaintiffs' Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983 (Plaintiffs v. all Defendants); (III) municipal/*Monell* liability pursuant to 42 U.S.C. § 1983 (Plaintiffs v. the City); (IV) conspiracy pursuant to 42 U.S.C. § 1983 (Plaintiffs v. the City, Brasile and McDowell); and (V) supervisory liability pursuant to 42 U.S.C. § 1983 (Plaintiffs v. Mayor Wolford).  (Docket No. 17).

To summarize Plaintiffs' claims, Count I alleges that because Plaintiffs participated in the various meetings described, and because they spoke out as they did, Defendants improperly terminated Plaintiffs' Fire Department membership in retaliation for their exercise of their First Amendment freedom of speech rights.  (Docket No. 17, ¶¶ 187, 275-91).  Count II alleges that Defendants denied Plaintiffs proper notice and a proper appeal hearing regarding their termination from the Fire Department in violation of their Fourteenth Amendment due process rights.  (*Id.* ¶¶ 292-320).  Count III is actually redundant of other Counts against the City in the Amended Complaint as it alleges a theory of liability for those Counts, which is that the City is liable for the conduct described therein under the theory of municipal liability.  (*Id.* ¶¶ 321-39).  Count IV alleges that certain Defendants, Brasile, McDowell, and the City, conspired together to deny Plaintiffs their constitutional rights.  (*Id.* ¶¶ 340-54).  Finally, Count V alleges an additional theory of liability against Mayor Wolford, that she is liable for the acts of her subordinates who violated

Plaintiffs' constitutional rights under the theory of supervisory liability as set forth in the Amended Complaint.  (*Id.* ¶¶ 355-63).

The Fire Department Defendants have filed a motion to dismiss Counts I and II of Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The City Defendants have also filed a motion to dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6), and they join in and incorporate sections of the Fire Department Defendants' brief into their own brief.  Both motions to dismiss have been fully briefed and are now ripe for decision.[4]

## II.    <u>Standard of Review</u>

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (additional internal citation omitted)).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

---

[4]        The parties have also attached a number of documents to their briefs, which the Court has reviewed and cites herein as is appropriate for documents integral to or explicitly relied upon in the complaint.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)).

### III.   <u>Legal Analysis</u>

Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 functions as a "vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (quoting 42 U.S.C. § 1983). Section 1983 does not create substantive rights by its own terms, but it instead provides remedies for violations of rights that are established elsewhere in the Constitution or in federal law. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). To establish a claim under section 1983, two criteria must be met:  1) the conduct complained of must have been committed by a person acting

under color of state law; and 2) the conduct must deprive the plaintiff of rights secured under the Constitution or federal law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir.1998).

## A. Count I:  First Amendment Retaliation Pursuant to 42 U.S.C. § 1983 (Plaintiffs v. All Defendants)

In Count I of their Amended Complaint, Plaintiffs claim, pursuant to 42 U.S.C. § 1983, that Defendants retaliated against them because Plaintiffs had exercised their First Amendment rights to free speech as citizens regarding matters of public concern.  (Docket No. 17, ¶¶ 275-91). The Fire Department Defendants argue that Count I should be dismissed because the speech alleged by Plaintiffs involves only limited matters of public concern, and therefore the interests of Plaintiffs and the public in the expression of such speech is outweighed by the Fire Department Defendants' interests in avoiding disruption to their organization.  The City Defendants join in the Fire Department Defendants' argument.

"A public employee's speech is protected under the First Amendment's Speech Clause when the speech pertains to 'a matter of public concern, and the employee's interest in expression . . . [is not] outweighed by any injury the speech could cause to the interest of the state as an employer in promoting efficiency of the public services it performs through its employees.'" *Dunkel v. Mt. Carbon/North Manheim Fire Co.*, 970 F. Supp. 2d 374, 382 (M.D. Pa. 2013) (quoting *Watters v. City of Phila.*, 55 F.3d 886, 892 (3d Cir. 1995)).  Accordingly, public employees have a constitutional right to speak regarding matters of public concern without fear of retaliation.  *See Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (citing *Baldassare v. State of New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001)).  That right also generally extends to volunteers since the opportunity to serve as a volunteer constitutes the type of governmental benefit or privilege the deprivation of which can trigger First Amendment scrutiny.  *See Hyland v. Wonder*,

972 F.2d 1129, 1135-36 (9th Cir. 1992); *see also Versarge v. Township of Clinton New Jersey*, 984 F.2d 1359, 1364 (3d Cir. 1993) (assuming that First Amendment concerns of government employees would also apply in a volunteer context).  A public employee or volunteer does not have an absolute right of expression, however, since an employer also has a right to exercise some amount of control over its work force.  *See Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 976 (3d Cir. 1997).

Courts employ a multi-step process in balancing the First Amendment rights of public employees against the rights of their employers.  *See Baldasarre*, 250 F.3d at 194-95; *Versarge*, 984 F.2d at 1364 (describing the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968)).  First, a court must determine whether a plaintiff's speech is protected, *i.e.*, whether it involves a matter of public concern.  *See Baldasarre*, 250 F.3d at 195; *Versarge*, 984 F.2d at 1364.  Second, if the court decides that the plaintiff's speech involves a matter of public concern, the court must then decide whether the interests of the plaintiff and the public in that speech are outweighed by the internal disruption such speech causes the employer.  *See Baldasarre*, 250 F.3d at 195; *Versarge*, 984 F.2d at 1364; *Rankin v. McPherson*, 483 U.S. 378 (1987).  These determinations are questions of law to be decided by the court.  *See Baldasarre*, 250 F.3d at 195; *Versarge*, 984 F.2d at 1364.  If such criteria are met, the "plaintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Baldasarre*, 250 F.3d at 195.  The public employer can rebut the plaintiff's claim by showing that it would have made the decision at issue even in the absence of the protected speech.  *See id.*

With regard to the first step in this balancing process, "'[a] public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community.'" *Id.* (quoting *Green v. Phila. Hous. Auth.,* 105

F.3d 882, 885–86 (3d Cir. 1997) (additional quotation marks and citation omitted)).  In making its determination whether speech involves a matter of public concern, the court should "focus on the content, form, and context of the activity in question." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Watters*, 55 F.3d at 892).  For example, the content of speech "may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'"  *Id.* (quoting *Holder,* 987 F.2d at 195 (internal quotations and citation omitted)).  Thus, "[t]he public has an interest in '[f]ree and unhindered debate on matters of public importance,'" and it also has "'a significant interest in encouraging legitimate whistleblowing so that it may receive and evaluate information concerning the alleged abuses of . . . public officials.'"  *Versarge*, 984 F.2d at 1366 (quoting *Pickering*, 391 U.S. at 573, and *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1062 (3d Cir. 1989)).  Speech is not protected, however, if it consists merely of personal grievances.  *See Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994); *see also Dunkel*, 970 F. Supp. 2d at 382 (explaining that the Court must know the content, form and context of speech to determine whether it is speech by a private citizen on a matter of public concern, or whether it is speech by a dissatisfied employee that does not have any public import).  Additionally, while not controlling, an employee's motivation in speaking is a factor to be considered in assessing the character of that employee's speech.  *See Zamboni v. Stamler*, 847 F.2d 73, 77-78 (3d Cir. 1988).

In their motion, Defendants direct the Court's attention to the Third Circuit's opinion in *Versarge v. Township of Clinton New Jersey*, which involved a volunteer firefighter who alleged that he suffered retaliation for voicing his concerns about a hose company's firehouse remodel without proper permits.  *See* 984 F.2d 1359, 1361-63 (3d Cir. 1993).  In *Versarge*, the Third Circuit explained that while the content of the plaintiff's speech may appear to have been related to

something that the public could be concerned about (*i.e.*, improper remodeling could damage a municipal building, and township ordinances may not have been obeyed), the form and context of that speech also had to be considered. *See id.* at 1364-66. Accordingly, the Third Circuit noted that the plaintiff in that case did not engage in the speech at issue until after a dispute had arisen between him and the fire chief over an entirely unrelated issue (the plaintiff was also director of a homeowners' association and had been petitioning to close a street in his community to traffic), which indicated that the speech was of less significant public concern under *Pickering*. *See id.* at 1365. The Third Circuit also noted that the district court had concluded that the plaintiff was motivated by a personal grudge against the fire chief and the hose company and by anger over the hose company's position on the unrelated issue (that the proposed street closure would create an unsafe condition because emergency vehicles would be unable to respond to the community). *See id.* Upon consideration of those factors, the Third Circuit held that the plaintiff's assertion that his speech was motivated by concerns regarding insurance or safety was insufficient to create a genuine issue of material fact. *See id.* The Third Circuit concluded that the plaintiff's speech involved matters of, at most, limited public concern under *Pickering*, and was therefore to be afforded little weight in the Court's balancing analysis. *See id.* at 1366.

Defendants argue that Plaintiffs' allegedly protected speech here, like in *Pickering*, involved matters of only limited public concern. Upon review of the specific instances of speech that Plaintiffs allege in their Amended Complaint, the Court notes that, while not all of that speech appears to have involved matters of great public concern, some of that speech does appear to have addressed areas of significant public concern. For example, Plaintiffs allege that Brasile falsified his personal fire call response numbers in order to increase his personal stipend payments, and that he falsified fire department call response statistics in order to inflate its ISO rating. (Docket No.

17, ¶¶ 54, 57).  Such allegations could be of significant public concern because they potentially involve allegations of fraudulent activity within the community's Fire Department.  Plaintiffs also allege that Brasile certified many defective fire hydrants as being fully operational, which could have been an issue of significant public concern because such conduct involves important public safety issues.  (*Id.* ¶¶ 57, 60).  In considering the context of Plaintiffs' speech, the Court is aware that the parties appear to have been engaged in a long-running dispute regarding a number of matters, including a disputed election for Fire Chief, and that the speech at issue appears to have occurred some time before and after that election.  Nevertheless, upon consideration of the allegations in Plaintiffs' Amended Complaint, the Court finds that some of Plaintiffs' speech did, in fact, involve significant areas of public concern.

Defendants further contend that, even if the Court finds that some portion of Plaintiffs' speech involved matters of public concern, the Fire Department's interest in avoiding disruption outweighed the interests of Plaintiffs and the public in the expression of such speech.  In considering a state employer's interests (*e.g.,* the extent of the disruption involved), a court should consider whether the speech:  (1) impaired the ability of superiors to discipline; (2) impaired harmony among co-workers; (3) had a detrimental impact on close working relationships for which personal loyalty and confidence are necessary; and (4) impeded performance of the speakers' duties, and interfered with the regular operation of the enterprise.  *See Rankin v. McPherson*, 483 U.S. at 388 (citing *Pickering*, 391 U.S. at 570).  Defendants ask that, in considering their motions to dismiss, the Court find here in accordance with *Versarge*, where the Third Circuit concluded that undisputed evidence showed that the plaintiff's speech "created major disruption at the Hose Company."  984 F.2d at 1366.

Comparing the present case with the Third Circuit's opinion in *Versarge*, however, the Court notes that Defendants have filed motions to dismiss pursuant to Rule 12(b)(6), while *Versarge* addressed the appeal of the district court's ruling on summary judgment motions. Importantly, the parties in *Versarge* had engaged in discovery (including depositions) before filing their motion, and the Third Circuit relied heavily on such evidence in reaching its conclusions. For instance, the Third Circuit cited to the plaintiff's deposition in evaluating the motivation underlying his speech, and the Court cited to the plaintiff's deposition, affidavits and other documentary evidence in considering the extent of the disruption that the plaintiff's speech caused the hose company. *See Versarge*, 984 F.2d at 1365-67. Therefore, although in *Versarge* the Third Circuit ultimately found that the interests of the fire department outweighed the limited interests of the plaintiff and the public, because discovery had already occurred in that case, the Court relied upon significant undisputed evidence of record in doing so. *See id.* at 1368.

Here, in contrast, the Court is being asked – via motions to dismiss – to consider whether Plaintiffs adequately allege facts showing retaliation for speech pertaining to matters of public concern, as well as facts showing that the interest of the public and Plaintiffs in that expression is not "outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." *Watters v. City of Phila.*, 55 F.3d 886, 892 (1995). Defendants argue in their briefing that Plaintiffs, through the speech alleged, attempted unilaterally and improperly to negate the Fire Department's suspensions (which impaired internal discipline), and attempted to overturn the December 2019 election, to unilaterally expel Brasile, and to install Nico Giovannagelo as Fire Chief (which negatively impacted close working relationships and loyalty, forced members to choose sides, undermined the chain of command, and interfered with operations). As the parties have not yet engaged in

discovery in this case, however, the Court finds that it would be premature to find at this juncture that Defendants' portrayal of the events alleged shows that the Fire Department's interests, or the interests of the City Defendants, prevail over the interests of Plaintiff and the public here.[5]

Accordingly, the Court cannot find that Plaintiffs fail to allege a First Amendment claim of retaliation based on Defendants' argument that the speech at issue involved limited matters of public concern and that the interests of Defendants outweigh the interests of Plaintiffs and the public.

**B. Count II: Fourteenth Amendment Due Process Violation Pursuant to 42 U.S.C. § 1983 (Plaintiff v. All Defendants)**

In Count II of the Amended Complaint, Plaintiffs claim that Defendants violated their Fourteenth Amendment due process rights under color of state law pursuant to 42 U.S.C. § 1983. (Docket No. 17, ¶¶ 292-320).  More specifically, as Plaintiffs clarify in response to Defendants' motions to dismiss, they assert two procedural due process claims, a property-based procedural due process claim, and a "stigma-plus" claim based on the alleged deprivation of their liberty interests in their reputations.  (Docket Nos. 25 at 23-24; 26 at 13).  In their motion to dismiss, the Fire Department Defendants argue primarily that Plaintiffs fail to allege a constitutionally protected property interest, which is required for Plaintiffs to successfully assert their Section 1983 claim.  Additionally, the Fire Department Defendants argue that Plaintiffs fail to allege a due process violation based on Plaintiffs' interests in their individual reputations.  Here too, the City Defendants join in the Fire Department Defendants' arguments.

---

[5]     The City Defendants mainly join in the Fire Department Defendants' argument as to Count I.  Although the City Defendants briefly comment that the speech at issue does not involve the City or Mayor Wolford, the Court need not explore such argument because the City Defendants do not develop or provide support for that argument, and their reply brief focuses solely on the dismissal of Plaintiffs' claims against Mayor Wolford.

### 1. <u>Deprivation of Constitutionally Protected Property Interests</u>

Plaintiffs first allege in Count II that, because they were not given proper notice and a proper hearing prior to or subsequent to their expulsion from the Fire Department, they were deprived of certain constitutionally protected property rights without due process of law.  (Docket No. 17, ¶ 316).  Defendants argue, however, that the property rights that Plaintiff allegedly lost are not constitutionally protected property interests entitling them to assert a Section 1983 claim.

In order to state a claim under Section1983 for deprivation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)).  As the United States Supreme Court has explained, "Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."  *Olim v. Wakinekona,* 461 U.S. 238, 250 (1983)).   Thus, the Court cannot skip its analysis of an allegedly protected interest and simply conclude that a party has a right to due process.  *See Dunkel*, 970 F. Supp. 2d at 381.  "Rather, the court must first determine 'whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property.'"  *Id.* (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.,* 587 F.3d 176, 194 (3d Cir. 2009) (additional citation omitted)).

According to the Third Circuit, "[p]roperty interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  *Chambers,* 587 F.3d at 194-95 (quoting *Bd. of Regents of State Colls. v. Roth*,

408 U.S. 564, 577 (1972)).  Therefore, in order to "'have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.'"  *Id.* at 195 (quoting *Roth*, 408 U.S. at 577)).  "Moreover, due process does not apply when the property interest involved is '*de minimis*.'"  *Dunkel*, 970 F. Supp. 2d at 380 (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975)).  If the Court determines that Plaintiffs have "'sufficiently pled property interests encompassed by the Fourteenth Amendment,'" the Court can then determine what process is due to them.  *Id.* at 381 (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985)).

In support of their contention that the property interests cited by Plaintiffs are not encompassed by the Fourteenth Amendment, Defendants argue that the facts of this case are similar to the situation presented in *Dunkel v. Mt. Carbon/North Manheim Fire Co.*, which also involved a volunteer firefighter who was suspended and ultimately terminated from his local volunteer fire company.  *See* 970 F. Supp. 2d at 374.  Much like Plaintiffs here, the plaintiff in *Dunkel* filed a complaint against the fire company and its trustees alleging three counts pursuant to Section 1983:  deprivation of a constitutionally protected property interest in his membership in the fire company under the Fourteenth Amendment, deprivation of a liberty interest in his reputation under the Fourteenth Amendment, and First Amendment retaliation.  *See id.* at 378. The United States District Court for the Middle District of Pennsylvania found that the plaintiff in *Dunkel* failed to identify an individual property interest protected by the Fourteenth Amendment because his use of the social hall and firefighter training were *de minimis* and were inextricably tied to the position from which he was expelled.  *See id.* at 380-81 (citing *Versarge*, 984 F.2d at 1359).  The *Dunkel* Court also found that the plaintiff's life membership status and death benefit were *de minimis* because he could not access those interests unless he was a member of the fire company.  *See id.* at 381.  Although the plaintiff in *Dunkel* argued that the right to appeal set forth

in the fire department policies entitled him to due process, the District Court concluded that, since it found that he had not alleged the loss of any property interests that were protected by the Fourteenth Amendment, it was not appropriate for the Court to determine what process was due to him. *See id.* Therefore, the *Dunkel* Court simply concluded that the plaintiff failed to allege the deprivation of a constitutionally protected property interest, and it granted the defendants' motion to dismiss that claim. *See id.*

In the present case, the Court notes that certain property interests allegedly at issue, such as insurance policies and death benefit policies, appear to be somewhat similar to the types of interests that have been found to be *de minimis* in other cases, and which have thus failed to establish a legitimate claim of entitlement to an individual property interest in those cases. (Docket No. 17, ¶¶ 296-98). *See Dunkel*, 970 F. Supp. 2d at 380-81; *see also Versarge*, 984 F.2d at 1370 (concluding that, although the district court did not discuss whether the plaintiff's property interests were *de minimis* – because it found that, even if the plaintiff had some property interest, he had received all the process he was due – on the basis of the record on appeal, the benefits received by the plaintiff were *de minimis*). Here, however, Plaintiffs also allege the loss of property rights that *do not* appear to be *de minimis*, including a grant stipend that was allegedly earned by Plaintiff Christopher Blessing, and Plaintiffs' interests in the assets of Hose Company No. 1, "which included the real estate, structure and contents of the property located at 300 Alexandria Street, Latrobe, Westmoreland County, Pennsylvania." (Docket No. 17, ¶¶ 294, 295). Although it is unclear from the Amended Complaint exactly how Plaintiffs allegedly gained such property rights and what those property rights specifically consist of, at this juncture and based on the facts alleged, the Court finds that Plaintiffs adequately allege the loss of property rights that are not necessarily *de minimis*.

Because the Court concludes here that Plaintiffs do sufficiently allege lost property interests encompassed by the Fourteenth Amendment, the Court should also consider the process that was allegedly due to Plaintiffs and whether Plaintiffs allege that they were actually denied such procedural due process.  Although Defendants do not pursue these issues in great detail in their briefing, they do argue that "it should be further noted that unlike the firefighters in *Dunkel* and *Versarge*, Plaintiffs in this case were, in fact, afforded procedural due process." (Docket No. 22 at 35).  Defendants also briefly describe the process that was afforded to Plaintiffs in connection with their expulsion from the Fire Department, including that Plaintiffs were warned that they could face expulsion, that Plaintiffs were provided with expulsion letters providing the bases for their expulsions and notifying them of their rights, and that Plaintiffs appealed their expulsions. (*Id.*; Docket No. 29 at 12-14).  Defendants do not, however, directly address and/or resolve all of Plaintiffs' various allegations regarding procedural defects.  Plaintiffs' allegations as to such defects include that they were presented with defective/conflicting letters of expulsion and notices of appeal, that Brasile's recusal from their appeal proceedings came far too late to provide them with a fair process, and that Brasile engaged in intimidation and orchestration of the Appeal Board which resulted in sham proceedings. (Docket No. 17, ¶¶ 188-92, 193-200, 203-05, 206-25).  Upon consideration of such allegations, the Court finds that Plaintiffs sufficiently allege the denial of the process that was due to them in that situation.

The Court therefore finds that Plaintiffs do not fail to allege the deprivation of a Constitutionally protected property interest, nor do they fail to allege the denial of process that was due to them, in Count II of the Amended Complaint.

## 2. __Deprivation of Liberty Interests in Reputations__

Plaintiffs also allege, as part of their Fourteenth Amendment procedural due process claim in Count II, that Defendants deprived them of their liberty interests in their reputations. (Docket No. 17, ¶¶ 301-316). Defendants argue that, to the extent that Plaintiffs attempt to raise such a claim, they fail to state a claim upon which relief can be granted.

In support of their argument, Defendants again point to *Versarge*, wherein the Third Circuit found that the plaintiff volunteer firefighter failed to establish the deprivation of a protected interest in his reputation. *See* 984 F.2d at 1371. In so finding, the Third Circuit explained that "Courts that have addressed the constitutional requirements for a protected interest in reputation in a volunteer context have refused to find such a protected interest where the plaintiff has failed to show lost opportunity for employment." *Id.* (citing *Jungels v. Pierce*, 825 F.2d 1127, 1131 (7th Cir. 1987) (finding that the complaint failed to state a cause of action for deprivation of a liberty interest since the "principle does not reach a case where the employee is fired from a part-time, honorific job while retaining the employment that gives him his livelihood"); *Shands v. City of Kennett*, 789 F. Supp. 989, 995 (E.D. Mo. 1992) (finding no liberty interest implicated regarding a volunteer fire department where the plaintiffs failed to establish that their terminations caused them economic damage or lost employment opportunity); *Kennedy v. McCarty*, 778 F. Supp. 1465, 1477-78 (S.D. Ind. 1991) (finding that a reserve police officer failed to establish deprivation of a liberty interest because of termination where he did not show that the termination affected his primary means of employment)). In *Versarge*, the Third Circuit also noted its previous statement that, "'[s]tigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment.'" *Id.* (quoting *Robb v. City of Phila.*, 733 F.2d 286, 294 (3d Cir. 1984)); *see also Dunkel*, 970 F. Supp. 2d at 383-84

18

(noting this same statement by the Third Circuit in *Robb* and finding that the plaintiff's employment as mayor distinguished him from other volunteer firefighters, and that his averments demonstrated that his present or future employment as an elected official may have been affected by the fire company's termination, so the defendants' motion to dismiss the plaintiff's reputation claim was denied).

The Court therefore finds that, to the extent that Plaintiffs' due process claim is based upon deprivation of their interests in their reputations, because Plaintiffs do not allege that such deprivation affected their primary means of employment, they have failed to state a plausible claim upon which relief can be granted.

C. **Count IV:   Conspiracy Pursuant to 28 U.S.C. § 1983 (Plaintiffs v. Brasile, McDowell, and the City)**

In Count IV, Plaintiffs assert a claim, pursuant to Section 1983, that Defendants Brasile, McDowell and the City engaged in a conspiracy to deprive Plaintiffs of their constitutional rights. (Docket No. 17, ¶¶ 340-54).  "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).  "The elements of a claim of conspiracy to violate federal civil rights are that '(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,'" and under § 1983, the conspirators must act under color of state law.  *Id.* at 294, n.15 (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

Additionally, in order to adequately state a claim of conspiracy, "a plaintiff must present enough factual matter (taken as true) to suggest that an agreement was made, in other words, plausible grounds to infer an agreement." *Weber v. Erie County*, No. 19-124, 2019 WL 5746204, at *4 (W.D. Pa. Nov. 5, 2019) (additional quotation marks and citations omitted). "Further, the plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Id.* (additional quotation marks and citations omitted). Thus, a conspiracy claim cannot be based merely on suspicion or speculation. *See Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

Brasile and McDowell do not address Plaintiffs' conspiracy claim in their motion to dismiss. The City argues in its motion, however, that Plaintiffs' conspiracy claim against it should be dismissed because, among other things, the Amended Complaint is void of any explanation as to when, where, or how the City was made aware of, or had knowledge or information about, any plan concocted against Plaintiffs. Upon review of the Amended Complaint, the Court agrees. Specifically, Plaintiffs allege that Brasile and McDowell "conspired with each other" and "entered an agreement or understanding," that such agreement was entered into "subsequent to June 5, 2019," and that Brasile and McDowell committed a number of specific "overt" acts in furtherance of such conspiracy. (Docket No. 17, ¶¶ 341, 342, 344-52). In contrast, as to the City, the Amended Complaint alleges only that it acquiesced to, condoned, adopted and participated in the described conduct, but it contains no allegation that the City joined in such agreement, nor does it even aver that the City knew of the alleged conspiracy. (*Id.* ¶ 354).

Moreover, in response to the City's argument, Plaintiffs concede that they *do not* allege that the City "was part of the original agreement, understanding, plot, plan and conspiracy to retaliate against Plaintiffs entered into by Defendants Brasile and McDowell." (Docket No. 26 at

19).  Instead, Plaintiffs explain that they name the City in the conspiracy count "for acquiescing to, condoning, adopting and participating in the unlawful conduct of its elected officials, policymakers, decisionmakers and supervisory/management level personnel, including Defendant McDowell and Defendant Brasile."  (*Id.* at 18-19).

Upon consideration of the allegations in the Complaint as well as the parties' arguments, the Court finds that Plaintiffs have failed to state a plausible claim of conspiracy against the City as a separate entity.[6]  Mere allegations that the City condoned or participated in the conduct of McDowell and Brasile (and unspecified others) that resulted from McDowell's and Brasile's alleged conspiracy, do not, without more, equate with the City being part of the agreement that those two Defendants allegedly formed – particularly because Plaintiffs themselves admit that the City was *not* a party to that agreement.  Since Plaintiffs concede that the City was not involved in the original agreement allegedly entered into by Brasile and McDowell, and since Plaintiffs do not allege that the City ever joined in that agreement or even learned of the existence of that agreement, the Court cannot find that Plaintiffs have pled the first element of a conspiracy claim, that the City "conspired" or reached an understanding with the other Defendants to deprive Plaintiffs of their constitutional rights.

Accordingly, the Court finds that Plaintiffs fail to adequately allege a claim of conspiracy against the City in Count IV.  Plaintiffs' claim against the City in Count IV of the Amended Complaint should therefore be dismissed without prejudice.

---

[6]     As noted, the agreement underlying the conspiracy in Count IV was allegedly entered into only by McDowell and Brasile, and the only overt acts in furtherance of such conspiracy are alleged to have been taken by McDowell and Brasile.  Nevertheless, Plaintiffs also seek to hold the City liable in Count III for the actions of its elected officials, policymakers, decision-makers and supervisory/management level personnel under the theory of municipal liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See* discussion, *infra*.

D. **Claims against the City of Latrobe: Counts I, II, III and IV, and Municipal/*Monell* Libility**

In Counts I, II and IV, Plaintiffs allege several claims against the City pursuant to Section 1983. As explained, *supra*, Count III is, in actuality, redundant of Counts I, II and IV because it alleges a theory of liability upon which the other Counts may be based, but it does not allege an additional claim. Thus, viewing the Amended Complaint as a whole, Plaintiffs argue that the City is liable for the conduct of its policymakers, decision-makers, and other supervisory/management level employees and agents, as alleged in the various Counts of their Amended Complaint, based on municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).

To hold the City, a municipality, liable for violations under Section 1983, Plaintiffs must allege more than violations of their rights by a City employee; Plaintiffs must also sufficiently plead that those alleged violations are *attributable to* the City. "'[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197-98 (3d Cir. 2018) (quoting *Monell*, 436 U.S. at 691). Thus, the alleged violation of rights must have been caused by actions that were taken pursuant to a municipal "policy" or "custom." *See id.* at 198 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)); *see also Monell*, 436 U.S. at 690-94. "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *Natale*, 318 F.3d at 584 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). A "custom," on the other hand, involves "practices of state officials . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691.

22

Acts by a government employee may be deemed to be the result of a policy of the entity for whom the employee works in three situations: (1) where the individual acted pursuant to a formal policy; (2) where the individual himself has final policy-making authority so his conduct represents official policy; or (3) where a final policymaker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government. *See Hill v. Borough* of *Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006); *Jones v. Pittston Area Sch. Dist.*, No. 18-1919, 2021 WL 3673840, at *5 (M.D. Pa. Aug. 18, 2021).

Defendants argue that Plaintiffs' claims against the City should be dismissed because Plaintiffs allege no *policy or custom* of the City that violated their constitutional rights. Plaintiffs assert, however, that they do in fact allege such a policy or custom. Specifically, Plaintiffs argue that the Amended Complaint alleges that the City, by and through its City Code, adopted the by-laws of the Fire Department, including Article 8, Section 3(b), which states:

> No member shall make any derogatory or disparaging remarks in any public forum or venue about the [Latrobe Volunteer Fire Department] or its Companies nor perform any action that is damaging to the credibility of the [Latrobe Volunteer Fire Department] or its Companies. Doing so could result in disciplinary action(s) and/or expulsion.

(Docket No. 17, ¶ 269).

Plaintiffs aver that this Fire Department by-law serves to chill, eliminate, and punish a firefighter's speech as a citizen on matters of public concern. (*Id.* ¶¶ 268-74, 323). Plaintiffs further allege that the City, by and through its policymakers, decisionmakers and supervisory/management level employees acted pursuant to a custom of retaliating against individuals who engage in constitutionally protected activity and who exercised their First Amendment right to free speech. (*Id.* ¶ 326). Plaintiffs also aver that the City developed or

maintained policies or customs exhibiting deliberate indifference to individuals' constitutional rights and failed to mandate appropriate training for its supervisory or management level agents or employees who are responsible for protecting the rights of individuals.  (*Id.* ¶ 330-31).

Additionally, in their Amended Complaint, Plaintiffs provide specific examples of such allegedly retaliatory conduct attributable to the City.  Plaintiffs allege that Cody Giovannagelo engaged in protected speech and was then confronted by Brasile who threatened him with physical harm.  (Docket No. 17, ¶¶ 256-58).  Plaintiffs allege that Cody Giovannagelo reported the incident to two City Councilmen who raised the issue with the Mayor, members of City Council, and other policymakers and supervisory level employees of the City.  (*Id.* ¶¶ 259-60).  Plaintiffs further aver that these individuals took no remedial action and that, instead, Brasile terminated Cody Giovannagelo's employment as a paid duty driver, stripped him of his rank of lieutenant, and suspended him from the Fire Department.  (*Id.* ¶ 261).

Plaintiffs also allege in their Amended Complaint that Assistant Chief John D. Gessler exercised his right to speak as a citizen at meetings of City Council, the Fire Department, and Hose Company No. 1 regarding a number of issues of public concern, including safety risks due to Brasile's unjustified suspension of firefighters, his falsification of personal call responses and department call responses in order to obtain money, and his preclusion of Hose Company No. 1 firefighters from responding to calls.  (Docket No. 17, ¶¶ 152-157).  Plaintiffs aver that Brasile then expelled Assistant Chief Gessler from the Fire Department, and that the City, by and through its decisionmakers, policymakers and supervisory level employees, took no remedial action on behalf of Assistant Chief Gessler or against Brasile.  (*Id.* ¶¶ 158, 264-67).

Accepting the factual allegations contained in the Amended Complaint as true and construing them in the light most favorable to Plaintiffs, the Court disagrees with Defendants'

argument and finds that, under a reasonable reading of the Amended Complaint, Plaintiffs adequately allege a policy or custom of the City that violated their constitutional rights. Specifically, Plaintiffs identify a particular policy, a Fire Department by-law which is part of the City Code, that allegedly permits retaliation against firefighters for engaging in protected speech. Plaintiffs also adequately allege a custom of taking retaliatory action (or permitting such retaliatory action to be taken) against individuals for their exercise of such speech. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). Plaintiffs therefore "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Accordingly, the City Defendants' motion to dismiss will be denied to the extent that it seeks the dismissal of Plaintiffs' claims against the City based on a failure to plead municipal liability under *Monell*.

## E.  Claims against Mayor Wolford:  Counts I, II and V, and Supervisory Liability Pursuant to 28 U.S.C. § 1983

### 1.  Claims against Mayor Wolford in her Official Capacity

The Court notes that the Amended Complaint does not specify whether Mayor Wolford is being sued in her individual capacity, her official capacity, or both.  To the extent that Plaintiffs' claims are brought against Mayor Wolford in her official capacity, such claims should be dismissed with prejudice since the Amended Complaint also names the City as a defendant.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (explaining that official capacity claims need not be brought against local government officials since *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), held that local government units can be sued directly for damages and injunctive relief); *Schor v. N. Braddock Borough*, 801 F. Supp. 2d 369, 376-77 (W.D. Pa. 2011) (noting that since

25

local government agencies can be sued directly, claims brought against municipal employees or office holders are redundant of claims brought against the municipality and should be dismissed).

> ### 2.  <u>Claims against Mayor Wolford in her Individual Capacity, and Qualified Immunity</u>

To the extent that Plaintiffs' claims are brought against Mayor Wolford in her individual capacity, Plaintiffs allege in Counts I and II that all Defendants violated Plaintiffs' constitutional rights as described, *supra*.  Additionally, in Count V, Plaintiffs assert a separate claim against Mayor Wolford based on supervisory liability.  The Court notes, however, that Section 1983 claims alleging supervisory liability cannot be based merely on *respondeat superior* or vicarious liability. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  Rather, there are two theories of supervisory liability according to the Third Circuit, one "'under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm,'" and a second "'under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'"  *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (additional quotation marks and citations omitted)).

Here, Plaintiffs appear to argue that the second theory of supervisory liability applies, *i.e.,* that Mayor Wolford is liable for the conduct of her subordinate, Brasile, due to her participation in, direction of, or knowledge of and acquiescence in violating Plaintiffs' rights.  However, "[i]t is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 71 (3d Cir. 2011).  Therefore, a plaintiff must plead allegations of a supervisor's personal involvement with particularity.  *See*

*Round v. City of Phila.*, No. 19-3513, 2020 WL 2098089, at \*11 (E.D. Pa. May 1, 2020).  Notably, while the allegations specific to Count V contain only legal conclusions stating boilerplate language regarding the elements necessary to plead claims of supervisory liability, that Count incorporates by reference the previous allegations in the Amended Complaint.  (Docket No. 17, ¶ 355).

Moreover, upon review of the Amended Complaint in its entirety, the Court notes that all of Plaintiffs' claims against Mayor Wolford – First Amendment retaliation, Fourteenth Amendment denial of due process, and supervisory liability – are based on the following allegations:  that Plaintiffs complained to Mayor Wolford about Brasile's conduct, and that she advised them to handle the matter internally and to follow their by-laws (Docket No. 17, ¶¶ 55-56, 79-80, 109); that Mayor Wolford gathered legal opinions regarding the election which she stated found the election to be illegal (*id.* ¶ 124); that President McMaster advised attendees at a Fire Department meeting that he had a letter from Mayor Wolford indicating that she would not honor the results of the March election because it was illegal (*id.* ¶¶ 136, 137); that Mayor Wolford falsely and publicly accused Plaintiffs of falsifying call response numbers to be utilized by grant managers for the purpose of obtaining fire department grants (which she indicated she had received from Brasile) and that she did not believe Plaintiffs' accusations against Brasile (*id.* ¶¶ 244-249); and that Brasile's behavior toward Cody Giovannagelo and the expulsion of Assistant Chief Gessler was raised with Mayor Wolford and other supervisors, who took no remedial action (*id.* ¶¶ 260-63, 266-67).

The City Defendants argue in their motion to dismiss that, regardless of whether these allegations by Plaintiffs successfully plead constitutional violations, the claims against Mayor Wolford should be dismissed because such claims based on conduct alleged in the Amended

Complaint are barred by the doctrine of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  Additionally, qualified immunity protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

Specifically, the conduct of a government official "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The doctrine of qualified immunity is intended to shield officials who make "reasonable but mistaken judgments about open legal questions," and it provides protection to "'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Thus, the key question for a court to consider when considering whether qualified immunity protects an individual is whether the state of the law at the time the action occurred gave that individual "fair warning" that his action was unconstitutional.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Also, defining the right at issue is critical to a court's inquiry, and the court must frame the right "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The City Defendants argue that Mayor Wolford is entitled to qualified immunity in this matter because the Amended Complaint does not allege any actions by her that were violative of any clearly established constitutional duty on her part.  In response, Plaintiffs argue that their constitutional rights to free speech as citizens on matters of public concern and their rights to substantive and procedural due process were clearly established rights, and that Mayor Wolford would not have believed it permissible to retaliate against the firefighters for exercising their First Amendment rights, nor would she have believed it permissible to deny them their due process rights.  (Docket No. 26 at 24-25).

In making their argument, however, Plaintiffs state broad general propositions, but they fail to apply those propositions to the specific context of this case, as is required when considering questions of qualified immunity.  *See Saucier*, 533 U.S. at 201.  The Court does not doubt that Mayor Wolford would not have believed it permissible to retaliate against employees for exercising their First Amendment rights, nor would she have believed it permissible to deny employees their due process rights.  However, the issue of whether Mayor Wolford's conduct actually caused such constitutional violations is exactly what is at issue in this case, and the question for the Court to consider in determining if qualified immunity applies here is whether a reasonable person would have known that her conduct was clearly violative of Plaintiffs' constitutional rights.  As set forth, *supra*, the Amended Complaint alleges that Mayor Wolford advised Plaintiffs to follow their internal Fire Department by-laws in dealing with their complaints about Brasile, that she gathered legal opinions regarding the Fire Department election, that she stated that she believed Brasile's version of events, and that she sided with the Fire Department President when the Department process appeared to produce two slates of candidates.  Therefore, with regard to Mayor Wolford, the Court must determine whether it was clearly established at the

time of her conduct that taking the actions she did, under the circumstances alleged, entailed a violation of Plaintiffs' constitutional rights of which a reasonable person should have known.

No law has been found, either by the parties or by the Court, suggesting that Mayor Wolford's actions entailed a clearly established violation of constitutional rights.  The only case cited in the briefs regarding this issue is *Burns v. County of Cambria, Pa.*, 971 F.2d 1015 (3d Cir. 1992).  However, *Burns*, cited by Plaintiffs, discussed patronage dismissals and whether the defendant in that case was entitled to qualified immunity for believing that the firing of deputy sheriffs based on their political affiliations was permissible, and that case is therefore clearly distinguishable from the situation presented here.  *See id.* at 1024-25.  Despite *Burns* addressing claims of retaliation for exercising First Amendment rights, the distinct fact pattern presented there (which is quite dissimilar to the facts of this case) is not sufficient to support the argument that Mayor Wolford's actions in dealing with Plaintiffs constituted "clearly established" violations of their constitutional rights.

Therefore, the Court finds that, even if a constitutional violation occurred here – upon consideration of the specific allegations regarding Mayor Wolford contained in the Amended Complaint, as well as the lack of any case holding that somewhat similar actions caused a violation of a constitutional right – any such right was not "clearly established" at the time of Mayor Wolford's actions.  Based upon the state of the law at the time, it cannot be concluded that Mayor Wolford knew, *i.e.,* was put on notice, that her conduct violated Plaintiffs' constitutional rights.  Consequently, the Court finds that Mayor Wolford is entitled to qualified immunity in this matter.

Accordingly, as a matter of law, the Court finds that any claims brought against Mayor Wolford in her official capacity in the Amended Complaint should be dismissed with prejudice because the City is also a named Defendant.  Additionally, to the extent that Plaintiffs' claims are

brought against Mayor Wolford in her individual capacity in Counts I, II, and V, she is entitled to qualified immunity, and such claims should be dismissed without prejudice.[7]

**IV.**      **Conclusion**

Therefore, for the reasons set forth, the Fire Department Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 21) is **denied**, and the City Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 23) is **granted in part and denied in part**.  To the extent that the City Defendants' motion seeks the dismissal of the claims against Mayor Wolford in her official capacity, the motion is **granted**, and Plaintiffs' claims against Mayor Wolford in her official capacity are **dismissed with prejudice**. To the extent that the City Defendants' motion seeks the dismissal of the claims in Counts I, II, and V against Mayor Wolford in her individual capacity, the motion is **granted**, and Plaintiffs' claims against Mayor Wolford in her individual capacity in Counts I, II, and V are **dismissed without prejudice** to amendment with sufficient facts to state a claim upon which relief can be granted.   To the extent that the City Defendants' motion seeks the dismissal of Plaintiffs' conspiracy claim against the City in Count IV, that motion is **granted**, and Plaintiffs' conspiracy claim against the City in Count IV is **dismissed without prejudice** to amendment with sufficient facts to state a claim upon which relief can be granted.  To the extent that the City Defendants'

---

[7]      In their motions to dismiss, Defendants request, additionally, that Plaintiffs' request for an award of punitive damages be struck from the Amended Complaint.  Plaintiffs respond that they have not sought punitive damages against the City, the Fire Department or any Defendant in their official capacity.  (Docket No. 25 at 25).  Plaintiffs argue that whether they can sustain punitive damage claims against the individual Defendants likely turns on each Defendant's state of mind, and that making such a determination is not appropriate at this time.  (*Id.*).  The Court finds that Defendants' request to strike Plaintiffs' remedy request is premature at this juncture and declines to strike their punitive damages request from the Amended Complaint.

motion seeks the dismissal of Plaintiffs' claims in Counts I, II, and III against the City, the motion

is **<u>denied</u>**.

An appropriate Order follows.


_s/ W. Scott Hardy_
W. Scott Hardy
United States District Judge

Dated:  January 12, 2022

cc/ecf:  All counsel of record